**CINCINNATI AMBULATORY SURGERY CENTER, Appellee,**

v.

**OHIO CERTIFICATE OF NEED REVIEW BOARD, Appellee;**

**Our Lady of Mercy Hospital, Appellant.**

[Cite as *Cincinnati Ambulatory Surgery Ctr. v. Ohio Certificate of Need Review Bd.* (1988), 62 Ohio App.3d 1.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–478.

Decided Dec. 13, 1988.

*Vorys, Sater, Seymour & Pease, James P. Friedt, Janice J. Janes* and *Anne C. Griffin,* for appellee Cincinnati Ambulatory Surgery Center.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Barbara Serve,* for appellee Ohio Certificate of Need Review Board.

*Squire, Sanders & Dempsey, David J. Young* and *Bonnie Weaver Miller,* for appellant Our Lady of Mercy Hospital.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Lawrence D. Pratt,* for appellee Ohio Department of Health.

---

McCormac, Judge.

On July 6, 1984, Hamilton–Surgical Care, Inc. filed an application for a Certificate of Need ("CON") to build an ambulatory surgery facility to be known as Cincinnati Ambulatory Surgery Center ("CASC") with the State Health Planning and Development Agency ("SHPDA"), now known as the Ohio Department of Health ("ODH"). On September 21, 1984, SHPDA declared the application complete. The application stated that the project site was to be located at 3234 Jefferson Avenue, Cincinnati, Ohio 45220. Written notification to the public and affected persons was provided on October 5, 1984. Once an application is complete, SHPDA reviews it to determine whether to approve or disapprove the application. Ohio Adm.Code

3701–12–09. Ohio Adm.Code 3701–12–30 provides SHPDA with the criteria to be utilized when reviewing CON applications for ambulatory surgical facilities.

On December 12, 1985, the applicant notified SHPDA that it had selected a new site that would be located in the 45230 zip code area. On February 7, 1986, SHPDA granted the CON to CASC upon the condition that CASC provide SHPDA with an exact site location within sixty days. On April 1, 1986, CASC provided the exact site:

" 'Our Anderson Township facility will be located on a parcel of land located between Nimitzview Drive and Five Mile Road, containing approximately one acre. Said premises is located south of the office development known as Admiral's Walk.' " (Letter from Joseph J. Frank of Surgical Care Affiliates to Louis Pomerantz, Chief of the Office of Resources Development of ODH, March 31, 1986.)

This location is approximately one mile from Our Lady of Mercy Hospital ("OLMH").

On April 8, 1986, Pomerantz, Chief of the Office of Resources Development of ODH, wrote a letter to CASC stating that CASC had complied with the condition of approval. On April 10, 1986, OLMH requested SHPDA to reconsider its decision to grant the CON. SHPDA dismissed the request on the grounds that it had rendered its final decision on February 7, 1986, and that reconsideration requests needed to be made within thirty days pursuant to former Ohio Adm.Code 3701–12–15(A), now Ohio Adm.Code 3701–12–15(B).

On May 8, 1986, OLMH appealed SHPDA's dismissal to the Certificate of Need Review Board ("CONRB") and requested an adjudication hearing. A CONRB hearing examiner found that the CON should not have been granted until an exact site was provided; that CONRB did have jurisdiction to hear the case; and that the hearing was qualified *de novo*. The hearing examiner considered all relevant evidence up to the time of the hearing. The hearing examiner found an excess of need in the pertinent health service area. On October 5, 1987, the board found that Ohio Adm.Code 3701–12–30(A) prohibits SHPDA from approving applications for new ambulatory surgery facilities unless a need exists. CONRB adopted the findings of fact and conclusions of law of the hearing examiner and reversed SHPDA's decision to grant the CON to CASC.

CASC appealed CONRB's decision to the Court of Common Pleas of Franklin County, asserting that CONRB did not have jurisdiction to consider the appeal of OLMH because OLMH had not requested an adjudication hearing in time. OLMH intervened in this proceeding and joined CONRB as an appellee.

Based upon its reading of Ohio Adm.Code 3702–2–03(B), the court determined that the February 7, 1986 decision of SHPDA was an appealable decision and that the thirty-day time period for requesting an adjudication hearing began running at that time. Because OLMH did not request an adjudication hearing within thirty days of February 7, the court reversed the decision of CONRB, holding that it lacked subject matter jurisdiction.

Appellant, OLMH, asserts the following two assignments of error:

"I. The decision of ODH was final on April 8, 1986. That decision was appealable to the board.

"II. If the conditional approval is determined to be the final order, then thereafter the change in the site of the project rendered the Certificate of Need invalid."

Appellant reasons that an application for an ambulatory surgical center cannot be properly ruled complete without a specific site location, and that there can be no valid final approval of a CON until it is complete.

█ No statute or administrative rule defines how specific a site location must be before a CON application may be deemed complete and subsequently approved. This court has held that the definition of "site" and its application to a particular case are left to the discretion of CONRB, the trier of fact. *In re Akron Ambulatory Surgical Ctr.* (Apr. 11, 1985), Franklin App. No. 84AP–581, unreported, 1985 WL 10240. In *Akron,* the disputed application provided a site location of "Market Street in Fairlawn, Ohio." The CONRB hearing examiner determined that this statement of site was insufficient for approval. The examiner based his decision on pertinent statutes and regulations. Former R.C. 3702.55(C) was one of the statutes; it provided that a CON became inoperative if the site of the proposed facility were changed from that identified in the approved application. The examiner reasoned that, unless the site were specifically identified in the application, this statute would be, in our characterization, nothing more than a paper tiger.

Former R.C. 3702.55 is not the only regulation which supports the examiner's determination in *Akron.* Ohio Adm.Code 3701–12–30(B) contains language which indicates that a site location must be more specific than an area code:

"(B) Availability/accessibility.

"* * *

"(3) Each applicant shall include with the application a map delineating at least the following:

"(a) The 'proposed primary service area,' which shall be the area within thirty minutes travel time of the proposed ASF, and the 'proposed secondary

service area,' which shall be the area within sixty minutes travel time of the proposed ASF, both to be shown by zip codes;
" * * *

"(5) Each applicant shall document that the proposed location will meet local zoning requirements."

In order for these two provisions to have substance, the location needs to be a more specifically defined area: the thirty-minute travel time requirement would be difficult to apply to two zip code areas; zoning requirements are not uniform throughout a zip code area.

Ohio Adm.Code 3701–12–07 lends additional support to the position that a site location which only identifies the zip code area is insufficient. Subsection (C) sets forth the notice of intent requirements for a construction project:

" * * * The notice of intent shall contain the following information:

"(1) Name of sponsoring organization;

"(2) Name of [proposed] facility;

"(3) Location of project (address, city, county);
" * * * * "

The legislature's indication that the letter of intent of a proposed project should identify the address, city, and county of the proposed project leads to the conclusion that the legislature would expect an equally detailed location in the application for a CON. The letter of intent precedes the application in the procedure for acquiring a CON. Logically, the location at the later stage should be as detailed, if not more detailed, than the location at the earlier stage.

Appellees, ODH/SHPDA and CASC, have disputed OLMH's argument that the April 4, 1986 letter acknowledging receipt of the specific site designation was the final decision, arguing that the February 7, 1986 letter was a valid final appealable decision. Both appellees contend that the conditional approval did not prevent the February 7 letter from being a proper final decision, even if the order were erroneous because of the failure to define specifically the site. Appellee, ODH/SHPDA, attached to its brief other SHPDA final decisions which contained conditions and were proper final decisions. However, the attached decisions do not require or support a finding that the conditional approval in the present case was a proper final decision. None of the examples of conditional CON grants involve conditions concerning site location. Rather, they involve the reclassification of beds and the number of beds in a facility. ODH also quoted SHPDA's decision which denied OLMH's request for reconsideration. The quote included the observation that "in some instances, a condition cannot be met until a facility/program is operational."

While that statement is true, it is inapplicable to this situation. The location of a project is not the subject of a condition that cannot be met until after completion. In fact, the site location must be ascertained before the project can be started.

Appellees also assert that the April 8 letter cannot be a final decision because the Director of ODH did not sign it. Instead, Louis Pomerantz signed the letter. Appellees argue that absent an express delegation of authority to make an ultimate decision, the Director of ODH's signature is necessary for a final decision. This argument ignores practicalities. The director's signature is not always required for a letter to constitute a final decision. Appellant supplies an Ohio Supreme Court case which acknowledges the practicalities of operating public administrative bodies, such as ODH/SHPDA, "[i]n the operation of any public administrative body, subdelegation of authority, *impliedly* or expressly, exists—and must exist to some degree." (Emphasis added.) *Bell v. Bd. of Trustees of Lawrence Cty. Gen. Hosp.* (1973), 34 Ohio St.2d 70, 74, 63 O.O.2d 115, 117, 296 N.E.2d 276, 278. The Office of Resources Development handled the CON application process; the signature of the chief did not prevent the April 8 letter from being a final decision.

Our decision in *Akron, supra,* reveals a final reason for finding that the site location at issue in this case required a specific location to permit SHPDA to grant final approval of the application. We held that the trier of the fact has the discretion to decide in a case-by-case situation how specific a site location must be. In this case, the hearing examiner personally drove through the zip code area after discussing it with the attorneys. In light of his first-hand view of the area, combined with the *Akron* decision of CONRB, the examiner concluded that the proposed site needed to be designated in the CON application. Thus, not only does the statutory language support the conclusion that the zip code was insufficient for a CON application to be approved, but the trier of fact's personal observation also supports this finding.

If we were to hold that a very general site location could provide the basis for issuance of a CON conditioned upon later specific identification of the site, with no right to appeal from the time that the site was specified, much of the CON application and review process would be rendered impotent. Arguably, an applicant could designate the city of Cincinnati with the specific location to be designated later. Other hospitals would not know whether or not they were vitally affected. It makes a very significant difference whether the competitor hospital is located one mile away or ten miles away. This difference also applies to the determination of whether there is a need for a facility at that location. Public hearings are only meaningful if there is a reasonably

specific site location. A zip code number was found to be not specific enough. This is a finding well within the discretion of CONRB. Once this finding was made, it was demonstrated that the order of February 7, 1986 was so lacking in an essential element that the order was not final. While an appeal from the February 7 order may also have been utilized to arrive at this conclusion, the availability of that remedy did not preclude an appeal of the order supplying the missing essential element.

■ OLMH's reconsideration request was, therefore, timely because OLMH presented it to SHPDA within thirty days of the mailing of the SHPDA letter which acknowledged the exact site location and was a proper final decision by SHPDA to approve the CON application of CASC. OLMH's request for an adjudication hearing to CONRB fell within the thirty-day time period of Ohio Adm.Code 3702–2–03(B) for requesting a hearing concerning a SHPDA decision.

Appellees argue that allowance of the appeal from the fulfilling of the condition by supplying a proper site designation would render any condition in a CON allowance subject to later appeal. We disagree. Our decision herein is limited to the later supplying of a specific site designation where the conditional granting of the CON contained only a site designation that was so general that it did not constitute designation of a site and, thus, was in the same category as if no site had been designated.

■ Appellee, CASC, also argues that, if we find that CONRB did have jurisdiction to hear the merits of the appeal, it erred when it found that the hearing conducted before the hearing examiner was a qualified *de novo* review and that evidence concerning the issue of need was admissible.

This case is on appeal from the court of common pleas. The issue of whether the CONRB hearing was a qualified *de novo* one was asserted to the common pleas court. However, the court did not decide that issue because it determined that CONRB had no jurisdiction for the appeal in the first instance. Because the common pleas court did not rule on the merits of this issue and because appellee filed no notice of appeal with this court, we decline to decide this issue.

Appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled as not properly before the court. The common pleas court's finding concerning jurisdiction is reversed. This case is remanded to the trial court to determine the merits of the decision of the CONRB.

*Judgment reversed*
*and case remanded.*

REILLY and LYNCH, JJ., concur.

JOHN J. LYNCH, J., retired, of the Seventh Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.