**In re AULTMAN HOSPITAL.**

[Cite as *In re Aultman Hosp.* (1992), 80 Ohio App.3d 134.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1192.

Decided May 19, 1992.

*Squire, Sanders & Dempsey, David J. Young* and *Robert C. Maier,* for appellant Aultman Hospital.

*Lee Fisher,* Attorney General, and *Christopher B. McNeil,* Assistant Attorney General, for appellee Certificate of Need Review Board.

*Bricker & Eckler, Gretchen A. McBeath, Scott W. Taebel* and *James F. Flynn,* for Children's Hospital Medical Center of Akron and D. Gary Benfield, M.D.

*Lee Fisher,* Attorney General, and *Dennis G. Nealon,* Assistant Attorney General, for Ohio Department of Health.

---

Bowman, Judge.

Appellant, Aultman Hospital, is an Akron hospital licensed to provide Level II perinatal care to newborn infants.[1] In May 1990, appellant requested a ruling from the Ohio Department of Health ("ODH") indicating whether the implementation of Level III neonatal and obstetrical services at the hospital would be a reviewable activity under the Certificate of Need ("CON") statutes. By letter dated July 6, 1990, ODH ruled that appellant's delivery of Level III perinatal services would constitute a reviewable activity.

Appellant appealed ODH's ruling of reviewability to the Ohio Certificate of Need Review Board ("CONRB"), and appellees, Children's Hospital Medical Center of Akron and D. Gary Benfield, M.D., along with Akron City Hospital, filed a notice of intervention as of right. Appellant opposed intervention by

---

1. Level II perinatal care is defined by ODH's Division of Maternal and Child Health as providing " * * * a full range of maternal and neonatal services for uncomplicated patients as well as the majority of complicated obstetrical problems and certain neonatal illnesses. * * * " Level III care comprises "[f]acilities providing care for normal patients, but especially for all serious maternal, fetal and neonatal illnesses or abnormalities. * * * " See State Perinatal Guidelines (adopted October 1977), Ohio Department of Health Division of Maternal and Child Health, at 9.

appellees. Simultaneously with its appeal to the CONRB, appellant submitted a CON application to ODH, which was also denied. Appellant appealed that denial to the CONRB as well, but those proceedings have been stayed pending appellant's appeal of the determination of reviewability.

By agreement, the parties submitted the present matter to the CONRB on briefs and stipulations. On August 12, 1991, the CONRB's hearing examiner recommended granting intervention for appellees, but denying intervention for Akron City Hospital. Further, the hearing examiner found that appellant's proposed redesignation from Level II to Level III is a reviewable activity because it constitutes a recategorization of registered beds under R.C. 3702.51(R)(7)(b). The CONRB issued an order adopting the hearing examiner's report and recommendation, thereby affirming ODH's determination of reviewability. Appellant now appeals the order of the CONRB, assigning as error that:

"The Certificate of Need Review Board erred by finding that a change in the level designation of a perinatal center is reviewable under Certificate of Need law as a 'recategorization' pursuant to R.C. § 3702.51(R)(7)(b)."

■ Appellant first argues that obstetric and newborn beds constitute unitary service categories under Ohio Adm.Code 3701–59–02(C) and, therefore, a change from Level II to Level III would not be considered a recategorization requiring a reviewability determination.

R.C. 3702.51 provides, in part:

"(R) Except as otherwise provided * * *, 'reviewable activity' means any of the following:

" * * *

"(7) Any of the following changes in bed capacity of a health care facility:

" * * *

"(b) A recategorization of beds * * *, other than a recategorization of beds from an adult medical/surgical unit to an existing adult intensive/special care unit, or from a pediatric unit to an existing neonatal or pediatric intensive care unit, by a health care facility with an average occupancy rate of ninety-five per cent or greater for the preceding twelve months in the intensive care unit to which the beds are to be added, and where the recategorization amounts to no more than nine beds or ten per cent of the bed capacity of the unit from which the beds were removed, whichever is less, within a two-year period and associated with a capital expenditure of less than one million five hundred thousand dollars[.]"

Ohio Adm.Code 3701–59–02(C) requires that beds within hospitals be registered in particular service categories, which are:

"(1) Short-term hospital beds (which includes units with an average length of stay of thirty days or less) as follows:

"(a) Medical/surgical, including:

"(i) Medical/surgical—general (which includes general medical/surgical and other specialized hospital beds for clinically related medical/surgical services not listed above, such as acute care for alcohol detoxification and drug abuse services);

"(ii) Medical/surgical—special care (which includes intensive care, coronary intensive care, or other intensive units);

"(b) Obstetric (level I, II or III as defined in 42 C.F.R. section 121.203);

"(c) Pediatric, not including neonatal intensive care, but including:

"(i) Pediatric—general;

"(ii) Pediatric—intensive care.

"(d) Psychiatric;

"(e) Physical rehabilitation.

"(2) Other beds within the hospital as follows:

"(a) Long-term (which includes units with an average length of stay of more than thirty days);

"(b) Skilled nursing facility (which includes only units certified under Title XVIII of the Social Security Act);

"(c) Alcohol and/or drug abuse rehabilitation;

"(d) Hospice.

"(3) Newborn care (level I, II, or III as defined in 42 C.F.R. section 121.204)."

Finally, Ohio Adm.Code 3701–59–02(E) provides as follows:

"An increase in, or redistribution of, the number of beds registered under this rule shall be made only upon implementation of a project for which a certificate of need has been issued, pursuant to the requirements of Chapter 3702. of the Revised Code."

Appellant emphasizes that Ohio Adm.Code 3701–59–02 establishes three broad categories of beds: (1) short-term hospital beds (under which obstetrics is listed); (2) other beds within the hospitals (*i.e.*, long-term care beds); and (3) newborn-care beds. Appellant notes that, under the short-term beds, five subcategories of beds are listed: (a) medical/surgical; (b) obstetrics; (c) pediatric; (d) psychiatric; and (e) physical rehabilitation; in addition to which medical/surgical is further divided into two subcategories, as is pediatric. However, obstetric is not divided in the same manner. Appellant asserts that

a close reading of the rule and common sense dictate that, if the levels of neonatal care must be interpreted as separate categories, further designation in the outline structure of the rule was required.

Appellant urges this court to adopt the reasoning of the Franklin County Court of Common Pleas set forth in *Fairview Gen. Hosp. v. Fletcher* (Sept. 28, 1989), Franklin C.P. No. 88CV–08–5554, unreported, involving a similar proposed change in neonatal care levels. That court held that the proposed change did not constitute a recategorization under R.C. 3702.51(R)(7)(b), based upon its conclusion that the statute did not sufficiently define "recategorization" to allow the ODH to interpret a level change as a recategorization. The Supreme Court recently upheld this court's reversal of the common pleas decision. *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 586 N.E.2d 80. In *Fairview*, the Supreme Court adopted, it its entirety, our reasoning in *Fairview Gen. Hosp. v. Fletcher* (Dec. 20, 1990), Franklin App. No. 90AP–726, unreported, 1990 WL 210722, which found that the common pleas court lacked jurisdiction to issue a declaratory judgment for the reason that the declaratory judgment action was an inappropriate means of contesting a reviewability decision of the director of ODH and an attempt to circumvent the statutory administrative appeal process. Since the decision of the director was not appealed to the CONRB it was *res judicata* and not subject to collateral attack through a declaratory judgment action in the court of common pleas. Specifically as to the merits, in *Fairview*, we stated:

"Since the merits of whether a change in the status of a NICU from Level II to Level III constituted a non-reviewable activity for which a CON was not required was not properly before the trial court, any declaration of rights would be dicta which we decline to state. However, it is important to note that the issue is not one that is clear and one-sided. The applicable statutes and regulations are sufficiently unclear that guidance should be sought from the appropriate administrative agencies. A court's determination should be reserved to a case where the issue is properly before the court rather than for the court to issue an advisory opinion."

Appellant's reliance on *Fairview* is not well taken because, in rejecting the common pleas court's decision in that case on procedural grounds, the Ohio Supreme Court also rejected any persuasive authority that decision may have had.

In reviewing a decision of an administrative board, we must give due deference to the administrative resolution of evidentiary conflicts, determining only whether the order is supported by reliable, probative and substantial evidence and is in accordance with law. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267; R.C.

3702.58(E)(3). In deferring to decisions of administrative boards, we are mindful that:

" * * * 'The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on the facts with boards or commissions composed of [individuals] equipped with the necessary knowledge and experience pertaining to a particular field. In providing for an appeal from the decision of such a board or commission, the General Assembly did not intend that a court should substitute its judgment for that of the specially rated board or commission * * *.' * * * " *Sterling Drug v. Wickham* (1980), 63 Ohio St.2d 16, 23, 17 O.O.3d 10, 14, 406 N.E.2d 1363, 1368, citing *Farrand v. State Med. Bd.* (1949), 151 Ohio St. 222, 39 O.O. 41, 85 N.E.2d 113.

█ While there is certainly merit to appellant's interpretation of R.C. 3702.51(R)(7)(b), where an ambiguous statute is subject to an administrative history of interpretation, this court may defer to the administrative construction of the statute, unless the interpretation is clearly in error. See R.C. 1.49(F); *State ex rel. Beck v. Casey* (1990), 51 Ohio St.3d 79, 81, 554 N.E.2d 1284, 1286. Our deference is based upon an awareness that an administrative judgment is " * * * the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies and responsible treatment of the facts. * * * " *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 151, 545 N.E.2d 1260, 1266.

In its order, the CONRB adopted the report and recommendation of its hearing examiner, who had deferred to the determination of the director of ODH that the proposed change in perinatal care levels was a recategorization of beds. As stated by the director of ODH in his letter to appellant dated July 6, 1990, " * * * [i]t continues to be ODH's position that perinatal level changes constitute reviewable bed recategorizations." The director additionally stated that:

"The Ohio General Assembly also appears to view level changes as recategorizations because divisions (R)(7)(c)(iv) and (T)(2)(d) of section 3702.51 of the Revised Code clearly refer to movement of beds from one perinatal level to another as recategorization.

"ODH has consistently held that a change among distinct levels of care within a perinatal system [is] reviewable. Every recategorization among levels has been declared reviewable for at least the past seven (7) years. The Department's position is not inconsistent with that of the hospital industry. The American Hospital Association collects data from all hospitals through the Annual Survey of Hospitals by Level I, II, and III. The Department of Health and the industry identify various care levels as distinct categories

because each level of care represents distinct care capabilities and service provision."

In reviewing the decision of the ODH director, the CONRB hearing examiner stated that:

"In deference to the interpretation of the ODH; taking into consideration the legislative history of the CON program, perinatal unit designation, the concept of regionalization, and the precedence of the ODH never changing level designation without prior CON Review; and recognizing the existence of the significant legal question involved, the Hearing Examiner finds that the change in perinatal level designation from level II to level III is a reviewable activity requiring a CON * * *."

Finally, appellant argues levels of perinatal care are properly regarded as licensing categories, not CON categories. This argument essentially reiterates appellant's contention that Ohio Adm.Code 3701–59–02(C) is unclear, with the added assertion that the guidelines used by ODH in evaluating the levels of perinatal care have not been adopted as part of the Administrative Code and cannot be applied as a method of determining need under the CON laws. However, R.C. 3702.51(R)(7)(c) [2] and R.C. 3702.51(T)(2) [3] refer to "categorization" of different levels of obstetric or newborn care beds, thus indicating that a level change should be considered a recategorization. Any ambiguity is resolved when the Administrative Code section is read in conjunction with the relevant Ohio Revised Code sections; therefore, any reference by ODH to guidelines which are part of a state plan but not made part of the Ohio Administrative Code is not error.

Based upon these considerations, we overrule appellant's assignment of error and affirm the order of the CONRB.

*Order affirmed.*

DESHLER and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting by assignment.

---

2. R.C. 3702.51(R)(7)(c) provides, in part:
"(iii) After the relocations occur, the relocated beds are categorized as general medical/surgical, general pediatric, or level I or II obstetric or newborn care beds;
"(iv) The relocation of the beds does not result in a recategorization of the beds by category of care provided, except that beds categorized as level III obstetric or newborn care beds may be recategorized to level I or II obstetric or newborn care beds[.]"

3. R.C. 3702.51(T)(2)(c) provides that:
"After the relocations occur, the relocated beds are categorized, for the purposes of registration under section 3701.07 of the Revised Code, as general medical/surgical, general pediatric, or level I or II obstetric or newborn care beds[.]"