## In re CONTINENTAL MEDICAL SYSTEMS OF OHIO, INC.

[Cite as *In re Continental Med. Sys. of Ohio, Inc.* (1993), 89 Ohio App.3d 821.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–1532, 92AP–1545.

Decided Aug. 12, 1993.

822

*Squire, Sanders & Dempsey, David J. Young* and *Robert C. Maier,* for Continental Medical Systems of Ohio, Inc.

*Emens, Kegler, Brown, Hill & Ritter, Donald A. Antrim* and *Noreen S. Wolff,* for R.H.S.C. Columbus, Inc.

*Lee Fisher,* Attorney General, and *Andrew Alatis,* Assistant Attorney General, for appellee Ohio Department of Health.

*Lee Fisher,* Attorney General, *Ransier & Ransier* and *Kathleen H. Ransier,* for appellee Ohio State University Hospitals.

BOWMAN, Judge.

Appellant, Continental Medical Systems of Ohio, Inc. ("CMS"), sought a certificate of need ("CON") from appellee, the Ohio Department of Health ("ODH"), for a fifty-one bed inpatient rehabilitation hospital to be located in Columbus, which is in Health Service Area V ("HSA V"). In September 1990, ODH denied the CON application of CMS. In October 1990, CMS appealed the denial of its CON application to the Certificate of Need Review Board ("CONRB") and, in May 1991, a lengthy hearing was commenced before the CONRB hearing examiner.

On July 19, 1991, after presentation of testimony but prior to the closing of the record by the hearing examiner, CMS filed a "Motion for Ruling upon Potential Site Change" in which CMS sought a determination by the hearing examiner that CMS could alter its site for the project. Where previously CMS had indicated that the project would be a freestanding facility constructed at I–270 and U.S. Route 23, in the Worthington area, CMS now proposed a plan whereby the facility would be constructed as a joint venture with and on the campus of Riverside Methodist Hospital ("Riverside") near State Route 315 and West North Broadway. Both sites are located in HSA V and Franklin County.

By order dated August 8, 1991, the hearing examiner indicated that, during the course of ODH's review of CMS's application, the ODH consultant was made aware of a potential affiliation between CMS and Riverside regarding this project, but that this fact was not expressly made a factor in the ODH consultant's recommendation or in ODH's decision to deny CMS the CON. The hearing examiner concluded that nothing prevented CMS from altering its site plans at that time, since the proceedings before the CONRB were *de novo*, and ordered that further evidence would be considered if CMS and Riverside signed an affiliation agreement by August 31, 1991. The hearing examiner additionally stated that, if either party made a request on or before August 31, 1991 to present evidence on the proposed change of operation and site, the hearing examiner would permit such evidence.

On August 29, 1991, CMS apparently submitted a letter dated August 19, 1991, from Michael Gire, counsel for Riverside, to counsel for CMS, in which Gire indicated no affiliation agreement had been executed, because Riverside wanted to wait to do so until there was a decision on the CON application. Gire's letter stated that CMS and Riverside had "reached substantive resolution of all major issues relating to their relationship in a joint venture to construct the proposed facility on the Turkey Run site adjacent to Riverside" but that the parties had wished to avoid the expense of preparing an actual affiliation agreement until it was clear whether a CON would, in fact, be granted for the project. In submitting the letter to the hearing examiner, CMS sought approval of the letter as a timely and suitable substitute for an affiliation agreement.[1]

Also, on August 29, 1991, ODH filed what appears to be a motion in which ODH stated:

"In the event that CMS * * * requests on or before August 31, 1991 to present evidence and/or testimony regarding 'an affiliation agreement [which] has been signed and is effective August 31, 1991' (Hearing Examiner's Order of August 7, 1991), ODH requests the opportunity to present in response thereto additional evidence and testimony regarding the propriety of the attempted amendment as indicated by the Hearing Examiner in said Order."

ODH sought a finding by the hearing examiner that the Gire letter, although submitted before August 31, 1991, did not constitute the required affiliation agreement, and so should be stricken. Thus, ODH urged that CMS should be

1. Although our review of the record as submitted to us does not reveal the Gire letter either as a part of the file or exhibits, the record does reflect that the hearing examiner did admit the letter into evidence as exhibit number seventy-four in an order dated November 6, 1991. Therefore, we will consider the copy of this letter as it appears in CMS's appendix to its appellate brief.

precluded from presenting any evidence as to the Riverside affiliation and the site change, since CMS had not properly raised that issue.

By order filed September 30, 1991, the hearing examiner determined that the Gire letter was acceptable in lieu of an affiliation agreement, and that this matter would proceed on the basis that, if CMS were granted a CON, the project would be undertaken in conjunction with Riverside and would be located on the Riverside campus. Also on September 30, 1991, the hearing examiner filed an order indicating that, barring a motion by either party requesting time to present additional witnesses or evidence on the change in site and affiliation issues, the record would be closed as of October 4, 1991.

On October 4, 1991, ODH moved for reconsideration of the hearing examiner's order accepting the Gire letter, and moved for an order compelling CMS to go forward with evidence regarding the new affiliation and change in site. CMS responded that, because ODH had not moved to present evidence as to the site change prior to October 4, 1991, ODH had waived its opportunity to do so now. The hearing examiner also expressed doubt as to her authority to compel CMS to present evidence of its proposed affiliation and site changes.

On October 21, 1991, the hearing examiner issued an order denying ODH's motion for reconsideration and indicated that, since neither party had requested a hearing on or before October 4, 1991, the record would be closed and the post-hearing briefing schedule would proceed as ordered. ODH then filed a motion to strike the Gire letter and the hearing examiner filed an order dated November 6, 1991, which overruled the motion to strike and admitted the letter into evidence, further indicating that ODH had lost its opportunity to obtain a hearing on the question of whether a CON should be issued for the new site.

Upon further argument by ODH that it had requested a hearing in its August 29, 1991 pleading, the hearing examiner issued an order on December 9, 1991, in which she indicated that it was her understanding that ODH only wanted the opportunity to present responsive evidence if CMS had requested a hearing, that CMS only wanted a hearing if she had failed to accept the Gire letter and that, since she had accepted that letter, there was no need for a hearing.

In her July 31, 1992 report and recommendation, the hearing examiner found that application of the rehabilitation-bed-need formula as set forth in Ohio Adm.Code 3701–12–216 indicated a need for at least fifty-one more inpatient rehabilitation beds in HSA V. The hearing examiner further stated additional evidence presented by the parties was considered, including current bed utilization in HSA V, local rehabilitation hospitals' admission policies, the demographic make-up of HSA V in regard to the likelihood of the populations' need for care, and the frequency of certain types of injuries or medical conditions likely to require inpatient rehabilitation services. The hearing examiner additionally

indicated that she considered the proposed facility's financial impact upon the pre-existing inpatient rehabilitation facilities, and the ability of those facilities to maintain nursing and therapy staffing once the proposed facility was constructed.

The hearing examiner concluded that CMS should be granted a CON, finding that the evidence in favor of a CON outweighed evidence against a CON, particularly with regard to the application of the bed need formula. Regarding the site change amendment, the hearing examiner stated that neither Ohio Adm.Code 3701–12–08(G) nor R.C. 3702.51(R)(6) applied to limit her ability to review the site change, since the Administrative Code section applies only during the review by ODH, and the Revised Code section applies only to site changes occurring after a CON is granted. She concluded that CMS had sustained its burden of proof and that a CON should be granted.

On August 14, 1992, objections by ODH to the hearing examiner's report and recommendation were due; however, on August 13, 1992, ODH filed a motion requesting an eight-day extension until August 21, 1992, to file its objections. On August 20, 1992, the CONRB held its August meeting, and the chairman of the CONRB informed the board that the extension had been granted to ODH and that the board's consideration of the hearing examiner's report and recommendation would be continued until the board's September meeting.

However, the CONRB did not hold its September meeting until September 24, 1992, more than thirty days after ODH had filed its objections to the hearing examiner's report and recommendation. At that meeting, the board voted to partially modify the hearing examiner's findings of fact and conclusions of law and voted to deny CMS a CON. The CONRB minutes for that meeting indicate the following with regard to the CMS application:

"Chairman Klein then stated the Board's statutory deadline to act on this matter was September 21, 1992. By his interpretation of the statute, the Board being unable to timely act or to extend the thirty-day time period, triggered the 'automatic adoption' provision adopting the Hearing Examiner's Report and Recommendation as the final Order of the Board pursuant to § 3702.60(D) of the Ohio Revised Code. Mr. Bennett stated he was under the impression that the action the Board took at its August 20, 1992 meeting was an extension of time for the Board to deliberate and consider the CMS matter until its September 1992 meeting. The September Board meeting did not transpire before September 21, 1992, but did occurr [sic] in September 1992 as the minutes indicated. At this point the Board reviewed that segment of the August 20, 1992 Minutes for further interpretation of the action the Board took in the CMS matter which read:

" 'The next item of business concerned a Board decision in the matter of CMS of Ohio, case No. 91–CON–12. Chairman Klein informed the Board that a motion

was filed with the Board by the Attorney General's office on behalf of the Department of Health requesting an extension of time to file objections. Such objections granted until Friday, August 21, 1992, by order of the Chairman pursuant to § 3702–2–24, Ohio Administrative Code. The matter of CMS of Ohio, case No. 91–CON–12 is continued until the September 1992 Board meeting.'

"Chairman Klein stated procedurally it's not appropriate to make a motion to interpret minutes. However, regarding this particular issue a consensus by the Board is needed. The roll was called to determine whether the action the Board took at its August 20, 1992 meeting constituted an extension of time for Board deliberation in the CMS matter until a September 1992 meeting. The vote was (8–1) with Chairman Klein in opposition. Senator Drake then changed her vote to nay. The motion carried (7–2) with Senator Drake and Chairman Klein opposing. * * *"

Having determined that its decision on CMS's application for a CON was timely, the board voted to deny the application and, on October 1, 1992, issued its order to this effect.

CMS now directly appeals to this court pursuant to R.C. 3702.60(E), and assigns the following as error:

"1. The Certificate of Need Review Board erred by failing to grant CMS a CON in accordance with the Report and Recommendation of the Hearing Examiner, which was deemed to be the decision of the Board by operation of law pursuant to R.C. 3202.60(D).

"2. The Certificate of Need Review Board erred in holding that the Hearing Examiner was barred as a matter of law from taking evidence as to CMS's amended site change and joint venture with Riverside."

In addition to the appeal by CMS, on November 5, 1992, R.H.S.C. Columbus, Inc. ("RHSC"), filed a notice of appeal in this court, and a motion to consolidate that case with CMS's appeal was granted. RHSC asserts it is an "affected person," as that term is defined in R.C. 3702.51(0)(2), because RHSC also applied for a CON for a rehabilitation hospital similar to that sought by CMS. RHSC assigns the following as error:

"The CONRB Order dated October 1, 1992 properly rejected the appeal of CMS on the grounds that the applicant was attempting to make major changes to key portions of the CON application at the CONRB level in violation of Ohio Administrative Code sections and *not* upon a finding that there was no need for additional rehabilitation beds in HSA 5."

Both ODH and the Ohio State University Hospitals ("OSU") have filed cross-appeals in this matter, although neither party has designated its arguments as assignments of error. ODH presents the following arguments:

"I. There is reliable, probative and substantial evidence, in accordance with law, supporting the CONRB order rejecting the CMS project, particularly in regards to CMS' subsequently requesting a new project, with new ownership, facility site and operations, none of which ever having been reviewed by the Director of Health.

"II. There is reliable, probative and substantial evidence, in accordance with law, showing the lack of need for the CMS project as specified in the CON review criteria."

OSU raises the following issues:

"I. In accordance with the law governing the Certificate of Need process, the Certificate of Need Review Board properly rejected the Hearing Examiner's recommendation for approval of an impermissibly amended application with respect to site, applicant and other matters not yet reviewed by the Director of the Ohio Department of Health.

"II. The findings of fact and conclusions of law recommended by the Hearing Examiner regarding the need for the facility proposed by CMS of Ohio, Inc. and the impact of the proposed facility upon current providers were not supported by reliable, probative and substantial evidence and were not in accordance with the law."

CMS's first assignment of error concerns the applicability of R.C. 3702.60(D), which provides, in part:

"The decision of the board shall be issued within thirty days after the expiration of the time for filing objections to the report and recommendation of the hearing examiner under section 119.09 of the Revised Code, except that the board may, for good cause shown, extend this thirty-day period for no more than an additional thirty days. The board's decision shall be based upon the record, and shall be final unless reversed, vacated, or modified upon judicial review. The time limits specified in this division may be extended by agreement of all the parties to the appeal. * * * If the board fails to convene and vote by the later of thirty days after the expiration of the time for filing objections to the report and recommendation of the hearing examiner or the expiration of the time limits of any extension of this thirty-day period by the board or by agreement of all parties to the appeal, the recommendation of the hearing examiner shall be considered as the final decision or order of the board."

■ Pursuant to this statute, a CON is deemed to be granted if such is the recommendation of the hearing examiner, and if the CONRB fails to convene and vote within the thirty-day time limitation. Where the "deemer clause" contained in R.C. 3702.60(D), formerly R.C. 3702.58(D), is applicable, it operates to render the report and recommendation of the hearing examiner to be the decision of the

CONRB. *In re Summit Health Care Ctr.* (Aug. 15, 1991), Franklin App. No. 90AP–1222, unreported, 1991 WL 159889.

In the case before us, the CONRB agreed to permit ODH an additional eight days in which to file its objections to the hearing examiner's report and recommendation, making the objections due on August 21, 1992. But the board did not extend its own thirty-day deadline and was required to have rendered its decision on the objections by September 21, 1992. By the time the board met again on September 24, 1992, the thirty days had expired, and the report and recommendation of the hearing examiner was deemed to have been adopted by the CONRB. Unwilling to accept the "deemer," the CONRB instead decided to amend the minutes of the August meeting to reflect a decision to extend its own deadline an additional thirty days, as it was permitted to do by statute. However, the board could not retroactively interpret its own minutes and, in any event, by the time the board attempted to do so the report and recommendation was already deemed adopted by operation of statute. By failing to convene and vote upon the report and recommendation of the hearing examiner within the thirty days prescribed by statute, the CONRB effectively adopted the hearing examiner's report and recommendation. As a result, the CON was deemed granted. CMS's first assignment of error is sustained.

CMS's second assignment of error asserts that the board erred in determining that the hearing examiner was barred as a matter of law from taking evidence as to CMS's amended site change and joint venture with Riverside.

Despite their failure to indicate some error on the part of the CONRB, the first issues raised by ODH and OSU on cross-appeal, and RHSC's assignment of error, all contend that CMS should not have been permitted to introduce evidence regarding the proposed site change and Riverside affiliation since those issues had never been subjected to ODH review.

The second issues raised by ODH and OSU urge our affirmation of the CONRB order because the hearing examiner's finding of need was not supported by reliable, probative and substantial evidence and was not in accordance with law. RHSC asserts, to the contrary, that there was sufficient proof of need for another fifty-one inpatient rehabilitation beds in HSA V, so that the CONRB did not reject CMS's application on the basis of lack of need.

We find that the issue of the need for the proposed facility is inextricably linked to the issue of whether the potential Riverside site and affiliation were supported by the requisite quantum of evidence, and it is in that context that we will consider whether CMS presented sufficient evidence of need. Thus, we will address all of ODH and OSU's arguments on cross-appeal and RHSC's assignment of error, with CMS's second assignment of error.

Because the decision of the CONRB rejecting the hearing examiner's report and recommendation was untimely and of no effect, the board's determination with respect to the hearing examiner's decision to allow CMS to alter its original site plans and affiliate with Riverside, and the board's conclusion of a lack of need for the project, is not properly part of the CONRB's order before this court. However, the issue remains whether the hearing examiner properly admitted evidence of the new site and potential CMS/Riverside joint venture, so as to determine whether the hearing examiner's finding of need was supported by reliable, probative and substantial evidence and was in accordance with law.

■ We will first address whether the hearing examiner properly admitted evidence regarding the proposed Riverside affiliation and site.

In *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 572 N.E.2d 673, the court concluded that, in order for the CONRB to fulfill its statutorily assigned factfinding role, the board, through its hearing examiner, must have the authority to conduct a full evidentiary review rather than simply to decide whether ODH abused its discretion. In *Timken,* the court found the statute placed the burden on the party requesting the hearing to show the decision of ODH is incorrect, and to that extent, the proceeding is not *de novo* in the purest sense of the term; however, the CONRB is to independently weigh the evidence, including that presented by ODH in defense of its order, and reach its own decision as to whether the applicant is entitled to a CON.

Since the CONRB is not confined to merely reviewing the ODH recommendation, the broad review powers afforded the CONRB would permit the hearing examiner to admit evidence of a proposed change in site or affiliation during the proceedings before the CONRB, even though such evidence was not a part of the original CON application. The argument made by ODH in this case, that, if additional evidence is admitted and considered, its work is rendered superfluous, was rejected in *Timken.*

ODH and OSU cite two cases from this court in support of their claim that the applicant is required to name a specific site and may not change the site after ODH review. In *In re Akron Ambulatory Surgical Ctr.* (Apr. 11, 1985), Franklin App. No. 84AP–581, unreported, the applicant argued that it had sufficiently specified the site of the proposed facility when it stated that the facility would be located on Market Street, in Fairlawn, Ohio. The CONRB agreed with the hearing examiner that former R.C. 3702.55(C), rendering a CON inoperative if the site is changed from that designated in the application, would be a nullity if the applicant was not required to specifically name a site and concluded that the description provided was insufficient. This court deferred to the CONRB, stating that:

"Nowhere in the applicable statutes or administrative regulations is the term 'site' defined. Thus, the definition of that term and its application to a particular case are left to the discretion of the board, as the trier of fact. [The applicant] has failed to demonstrate that the board abused its discretion in requiring a more specific designation of the proposed site of the facility. Therefore, this court finds that the board was within the bounds of its discretion under the circumstances of this case."

In *Cincinnati Ambulatory Surgery Ctr. v. Ohio Certificate of Need Review Bd.* (1988), 62 Ohio App.3d 1, 574 N.E.2d 529, this court again upheld a CONRB finding that an application lacked sufficient site specificity, because the applicant's description of site indicated only that the facility would be located within a certain zip code. We stated, in that case, that:

"If we were to hold that a very general site location could provide the basis for issuance of a CON conditioned upon later specific identification of the site, with no right to appeal from the time that the site was specified, much of the CON application and review process would be rendered impotent. Arguably, an applicant could designate the city of Cincinnati with the specific location to be designated later. Other hospitals would not know whether or not they were vitally affected. It makes a very significant difference whether the competitor hospital is located one mile away or ten miles away. This difference also applies to the determination of whether there is a need for a facility at that location. Public hearings are only meaningful if there is a reasonably specific site location. A zip code number was found to be not specific enough. This is a finding well within the discretion of the CONRB. * * *" *Id.* at 6–7, 574 N.E.2d at 532.

Rather than supporting the view that a CON applicant may not amend its site proposal after ODH review, as ODH and OSU suggest, these cases instead indicate that it is within the sound discretion of the CONRB to determine whether the applicant has named a site with sufficient specificity to give affected parties notice and to allow an informed decision on whether a CON should issue. Moreover, the issue presently before us is not whether either the Worthington site or the Riverside campus site named by CMS was sufficiently specific, but whether CMS could change its site designation during the pendency of its appeal to the CONRB and after the decision by ODH. Neither *Akron Ambulatory* nor *Cincinnati Ambulatory* addressed that issue.

■ Nor does the hearing examiner's decision to admit such evidence contravene either R.C. 3702.51(R)(6) or Ohio Adm.Code 3701–12–08(G).

R.C. 3702.51(R)(6) provides:

" * * * '[R]eviewable activity' means any of the following:

" * * *

"(6) Any change in the health care services, bed. capacity, or site, or any other failure to conduct the reviewable activity in substantial accordance with the approved application for which a certificate of need was granted, if the change is made within eighteen months after the implementation of the reviewable activity for which the certificate was granted[.]"

The statute generally provides that a change in site adopted shortly after the granting of a CON is a reviewable activity and, therefore, subject to ODH supervision. In drafting this statute, the legislature apparently recognized that the granting of a CON must be contingent upon the specifications proposed by the CON applicant and reviewed by the CONRB, and that to allow a CON holder to alter its site plans after the granting of a CON would, in essence, allow the CON holder to change the terms upon which the CON was granted.

Ohio Adm.Code 3701–12–08(G) provides:

"After notice of an application's completeness is mailed under paragraph (E) or (F) of this rule, the applicant may supply and the director may request additional information pertinent to review of the application in relation to the criteria established by this chapter, as they are in effect at that time. The applicant shall not make any amendment of the application that alters the site of the reviewable activity, as specified in accordance with paragraph (B) of this rule."

This provision prohibits the amendment of an application which alters the site once ODH has declared the CON application to be complete. Thus, this section only applies during the time in which the CON application is pending before ODH. Once ODH renders a decision on the CON application, the matter is no longer subject to ODH review but is subject to CONRB review. Thus, this provision does not address whether an applicant may change its site plans during CONRB review.

The hearing examiner's decision to admit evidence of a site change herein does not violate either R.C. 3702.51(R)(6) or Ohio Adm.Code 3701–12–08(G), since the statute only governs alterations adopted after the granting of a CON, and the Administrative Code section only applies to alterations occurring during ODH review. Here, no CON had been granted yet, so the CONRB could have conditioned a CON upon CMS's adherence to the specifications of site and affiliation expressed in the evidence presented to the hearing examiner, regardless of whether ODH originally reviewed such evidence. As a party to the CONRB hearing, ODH would be aware of the proposed changes and could present evidence in support of its views on the proposed changes. Therefore, allowing CMS to alter the terms of its application during CONRB review does not prejudice ODH.

In addition, the matter was before the CONRB because ODH had rejected CMS's application on the grounds that CMS had failed to establish a need in HSA V for another inpatient rehabilitation facility and not because of the proposed location of the CMS facility. Although ODH's decision mentioned that CMS had proposed a joint venture with U.S. Health, Inc., which is Riverside's corporate parent, ODH also indicated that, at that time, there was no evidence that any agreement between CMS and Riverside had been reached, and the suggestion of a joint venture was not expressly made a factor in its decision to deny the CON.

Because ODH rejected CMS's application on the basis that CMS had not established need in HSA V, there is no merit to ODH's current claim that, if ODH had had notice of the proposed site change and evidence of an affiliation agreement at the time ODH rendered its decision, or if the hearing examiner had declined to review evidence as to site and affiliation during CMS's CONRB appeal, ODH's finding of no need would have been affected. In short, had CMS's original application proposed a Riverside site and affiliation, such evidence could not have affected this basis for ODH's conclusion that another inpatient rehabilitation facility in HSA V was not warranted.

Having found that the hearing examiner could consider evidence as to the proposed Riverside affiliation and the location of CMS's inpatient rehabilitation facility on the Riverside campus, we still must determine whether, in the context of the proposed Riverside affiliation and site, there was substantial, reliable and probative evidence supporting the hearing examiner's conclusion that a CON should be granted.

█ In deciding whether to affirm the decision of the hearing examiner, this court must determine whether there was reliable, probative and substantial evidence before the hearing examiner to support her decision to grant the CON to CMS based upon the Riverside site and affiliation. Analysis of the hearing examiner's decision "essentially is a question of the absence or presence of the requisite quantum of evidence." *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267. In addressing whether the hearing examiner's decision was supported by substantial, reliable and probative evidence, we must give "due deference to the administrative resolution of evidentiary conflicts." *Id.*

In her report and recommendation, the hearing examiner failed to point to specific evidence supporting her conclusion that an affiliation between CMS and Riverside, in fact, exists. From the various pleadings and orders contained in the CONRB record, however, we find that the hearing examiner relied upon admissions contained in the Gire letter to support her finding that Riverside intended

to enter into a joint venture with CMS, and to allow CMS to construct its facility on Riverside's campus.

The hearing examiner did not indicate to what degree CMS's proposed location on the Riverside campus affected her conclusion that a CON should be granted. Our review of the transcript indicates that, although there was limited testimony regarding a possible affiliation agreement, there was testimony regarding the proposed Riverside site. This issue primarily arose when various physicians testified they would not recommend a freestanding facility without close access to an acute care hospital, as was originally proposed by CMS, because such an arrangement would pose a danger to patients who might need emergency care, or "code blue" resuscitation. When asked by counsel for CMS whether the answer to that question would change if CMS's facility were to be located on the campus of an acute care facility, such as Riverside, the witnesses responded that they would recommend an inpatient rehabilitation facility if it was located close to an acute care facility.

We thus conclude that reliable, probative and substantial evidence regarding the Riverside site and affiliation was presented during the hearing and post-hearing phases of the CONRB review to support the hearing examiner's consideration of need based upon those factors. Moreover, even if CMS should have presented further proof of its intent to build its facility in association with Riverside, the hearing examiner's report recommends that the CON should be granted contingent upon the construction of the facility on the campus of and in conjunction with Riverside. If CMS fails to obtain an affiliation agreement, CMS will have failed to abide by the terms of the CON, and the project will not be able to proceed. It is not improper to condition a CON so as to require the applicant to enter into an affiliation agreement or to construct the facility in a specified location. See *In re Manor Care of Kettering* (Dec. 31, 1992), Franklin App. No. 92AP–208, unreported, 1992 WL 394917.

It remains whether the hearing examiner's conclusion that CMS had demonstrated a need for the proposed facility in HSA V was supported by reliable, probative and substantial evidence and was in accordance with law. On this question, the hearing examiner's report was regrettably brief, in light of the fact that the hearing in this matter was held over a period of about eight weeks, during which some dozens of witnesses testified and hundreds of exhibits were presented.

To review a CONRB decision, this court should have before it a complete hearing examiner's report and recommendation, which fully summarize the content of all of the testimony and set forth the evidence relied upon in arriving at the conclusion reached. Although it is this court's obligatory duty to undertake a full evidentiary review of the record below, the failure of a hearing

examiner to file a comprehensive report and recommendation compounds the difficulty inherent in reviewing what is inevitably a lengthy record.

The hearing lasted about eight weeks and resulted in some twenty-six volumes of transcript, comprising testimony by approximately forty witnesses. The hearing in this matter was a virtual "battle of the experts," in which each side attempted to persuade the CONRB with overwhelming evidence that the facility proposed by CMS either did or did not merit a certificate of need. From perusing the avalanche of evidence in this case, we have no doubt that, given unlimited time and money, the parties could have obtained an infinite number of expert opinions on the subject of inpatient rehabilitation. We also surmise that the question of whether another inpatient rehabilitation facility is needed in HSA V arouses strong feelings among area physicians and hospital administrators, who are all eager to present their points of view.

The hearing examiner found that application of the bed-need formula set forth in Ohio Adm.Code 3701–12–21 resulted in a finding that fifty-one additional inpatient rehabilitation beds are needed in HSA V. However, the bed-need formula "is to be used as a guideline and not as the determinative factor in the CON process." See *Oak Park Manor v. State Certificate of Need Review Bd.* (1985), 27 Ohio App.3d 216, 218, 27 OBR 256, 258, 500 N.E.2d 895, 898. This court has also determined that "[a]t best, the formula can create only a rebuttable presumption of bed need." *In re Jefferson Health Care Ctr.* (Aug. 15, 1989), Franklin App. No. 89AP–182, unreported, 1989 WL 92065. Thus, the decision of the CONRB, here the report and recommendation of the hearing examiner, was required to have been "predicated upon evidence directly pertinent to the need," and not "solely upon the application of the so-called bed-need formula." *In re Eaglewood Care Ctr.* (Mar. 17, 1992), Franklin App. No. 91AP–357, unreported, 1992 WL 55435.

Evidence below indicated that there are currently five inpatient rehabilitation facilities located in HSA V: Dodd Hall at OSU with seventy-two beds; Doctor's Hospital with fifteen beds; Mt. Carmel Hospital with fifteen beds; Columbus Community Hospital with twenty beds; and a unit at the MedCenter in Marion, Ohio, with twenty beds. There was also testimony that some area physicians refer patients to a forty-four bed inpatient rehabilitation unit at Good Samaritan Hospital in Zanesville, Ohio, although that unit is not in HSA V.

CMS maintains that Columbus has the lowest number of beds per 100,000 population of any major Ohio city, and that the units are running at a high use rate. The figures presented by ODH indicated the following occupancy percentages for 1991:

| | |
|---|---|
| Doctor's Hospital | 71.4 percent |
| Dodd Hall (OSU) | 74.7 percent |
| Mt. Carmel Hospital | · 92.7 percent |
| MedCenter (Marion, OH) | 43.4 percent |
| Columbus Community Hospital | no data; opened in 1991 |

ODH argues that these figures indicate an average of less than eighty-five percent occupancy, thereby proving no need for additional beds. According to CMS, however, these figures must be read in light of other factors involved. For instance, CMS asserts that Dodd Hall is not staffing all of its beds, so that there are fewer beds available; that Doctor's Hospital beds are primarily intended for osteopathic patients, and that other physicians are reluctant to use the Doctor's unit for that reason; that Columbus Community Hospital is too new to have established itself as a source for inpatient rehabilitation care; that the Marion, Ohio facility is simply too far away for Columbus area patients; and that Mt. Carmel, at 92.7 percent capacity, is virtually full.

CMS asserted other grounds for approval of its proposed facility. According to CMS, with the shortage of inpatient rehabilitation beds, there is frequently a waiting list. Several of CMS's expert witnesses testified that having to wait for an inpatient rehabilitation bed hurts patients' chances of recovery, since there is a critical time during which a patient must begin therapy and, if that time is lost, the patient may never reach his full potential. According to ODH, however, when there is a wait, it is never longer than a week, and, even when patients must wait, they are undergoing rehabilitation in their acute care facility.

CMS also argued that the needs of stroke and orthopedic patients were being ignored by the current facilities, and that area physicians were experiencing difficulty in placing those patients, along with chronic pain patients and Medicare recipients. CMS particularly claimed that Dodd Hall at OSU prefers spinal cord and brain trauma patients because those patients tend to be younger and have the most potential for marked improvement. ODH countered that the current trend is toward outpatient rehabilitation, which is preferred for orthopedic patients, and that stroke patients are more likely to need nursing home care. ODH also indicated that at least one of its witnesses testified that Dodd Hall does treat chronic pain patients and treats its share of patients receiving nonprivate insurance.

A major area of contention between CMS and ODH was the issue of staffing. There was some evidence presented that there is a current shortage of rehabilitation nurses and other medical personnel, and that this is the primary reason why Dodd Hall has cut back on the number of beds it staffs. CMS presented evidence indicating that it would be training and recruiting its own staff, and would not simply lure staff away from the current facilities.

ODH also expressed concern that CMS would attract private-pay source patients away from other facilities, leaving them with patients receiving public assistance. Because hospitals must be satisfied with less payment from sources such as Medicare and Medicaid, ODH's witnesses indicated that being left with only those patients would be financially disastrous for present facilities. Nevertheless, CMS presented evidence that the injection of more competition among inpatient rehabilitation facilities in HSA V would not necessarily harm the facilities already in existence, since several physicians had indicated that the difficulty of placing patients in current facilities had caused them to find other alternatives, and that physicians would refer more patients for such care if sufficient beds existed.

Since Dodd Hall is both a nationally recognized facility and also the largest inpatient rehabilitation unit in HSA V, there was a plethora of evidence presented regarding the impact upon Dodd Hall of the addition of a fifty-one bed inpatient rehabilitation facility. CMS asserted that Dodd Hall, as a closed-staff facility, will not permit physicians not on its staff to continue to monitor their patients' progress after those patients are admitted to Dodd Hall. Several of CMS's witnesses were critical of this policy and of Dodd Hall's admissions policy, which screens outpatients with fevers and other problems. ODH countered that Dodd Hall's admission policies are not unreasonable, since, for example, patients with fever could be experiencing serious medical problems which need resolution before rehabilitation can begin. ODH also maintains that it would be impractical for Dodd Hall to allow outside physicians to continue to be involved once their patients are admitted to Dodd Hall, and that most physicians would not have the time or inclination to do so anyway.

Based upon this evidence, the hearing examiner concluded that the bed-need formula indicated a need for fifty-one more inpatient rehabilitation beds in HSA V:

"After a full and long consideration of all of the evidence and the issues relating to this proposed project, this Hearing Examiner believes that while there would naturally be an impact on current providers and potentially on some of their staff, that the adverse impact will not be significant and that there is enough 'room' in the HSA for an additional competitor facility to provide similar services.

"This Hearing Examiner further finds that there is a need in the service area community for a new physical rehabilitation facility, and that in the absence of other reliable information or formulae, that the codified formula, in this instance, is the best evidence of the community's need for inpatient physical rehabilitation beds."

In light of all the facts available to the hearing examiner, we find there was reliable, probative and substantial evidence before the hearing examiner from which she could make a determination to grant the CON to CMS. The points of contention between CMS, ODH, OSU and RHSC essentially relate to issues of weight and credibility of the evidence. It is not this court's function to retry the matter at hand and, where there is sufficient evidence from which the administrative board or, in this case, its hearing examiner may make a determination, we must give due deference to such administrative resolution of evidentiary conflicts. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276; *In re Aultman Hosp.* (1992), 80 Ohio App.3d 134, 138, 608 N.E.2d 1104, 1106, citing *Conrad.*

We therefore conclude that the decision of the hearing examiner, which became the order of the CONRB by operation of the "deemer" clause contained within R.C. 3702.60(D), was supported by reliable, probative and substantial evidence of need for the fifty-one bed inpatient rehabilitation facility proposed by CMS, to be built in affiliation with and on the campus of Riverside, and that such determination was in accordance with law. Therefore, we reject the arguments raised by both ODH and OSU, and overrule the assignment of error of RHSC.

Although, based upon our discussion above, the CONRB should not have barred the hearing examiner from taking evidence as to CMS's Riverside affiliation and site change, our determination that the CON was deemed granted by operation of R.C. 3702.60(D) renders CMS's second assignment of error moot.

CMS has filed a motion to dismiss the appeal of RHSC, alleging that RHSC is not an affected person under the CON statutes, that RHSC did not intervene at any level below, and that RHSC is not aggrieved by the board's decision, having only a future, contingent and speculative interest in these proceedings. RHSC has responded that it is an affected person as that term is defined because it has made application for a certificate of need for a facility similar to that sought to be constructed by CMS, and because the CONRB's rejection of CMS's application had an adverse impact upon RHSC's own application.

On March 17, 1993, CMS filed a supplemental brief in support of its motion to dismiss, alleging that RHSC has withdrawn its application for a CON and, therefore, if RHSC was ever an affected person, RHSC is not now an affected person, having no interest in the outcome of CMS's application. To this brief, CMS attached a document purporting to be a xerographic copy of a letter from Vickie Cantelupe of "National Medical Enterprises, Inc." to the director of ODH, stating that RHSC Columbus, Inc. is withdrawing its pending CON application,

ODH File No. 7960–01–092. RHSC has not responded to this supplemental brief in support of the motion to dismiss.

Other than CMS's attachment of the letter purporting to withdraw RHSC's application for a CON, there is no evidence in the record that RHSC has, in fact, withdrawn its application. This court may only consider evidence in the record before it and, unless or until the CONRB or RHSC itself files notice that RHSC's application is withdrawn or until RHSC dismisses its appeal to this court, we may not consider the letter purporting to withdraw RHSC's application for a CON, and we may not dismiss RHSC's appeal on that basis.

We find it unnecessary to address CMS's argument that RHSC is not an affected person and may not appeal to this court, since RHSC raises issues similar to those of the undisputed parties to this action and, since our discussion above disposes of those issues, we overrule CMS's motion to dismiss RHSC's appeal.

For the foregoing reasons, the first assignment of error of CMS is sustained. CMS's second assignment of error is overruled, RHSC's assignment of error is overruled, and the arguments of ODH and OSU, if indeed they may be viewed as assignments of error, are overruled. The motion of CMS to dismiss the appeal of RHSC is overruled. The order of the CONRB denying CMS a CON is reversed and this matter is remanded to the CONRB with the instruction to issue a certificate of need to CMS of Ohio, Inc., conditioned upon its affiliation with Riverside Hospital and construction of the facility contiguous to the hospital.

*Motion of CMS to dismiss overruled;*
*order reversed and cause remanded*
*with instructions.*

WHITESIDE and DESHLER, JJ., concur.