[Cite as *Access Ohio, L.L.C. v. Gahanna*, 2020-Ohio-2908.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Access Ohio, LLC, | : | |
| Appellant-Appellant, | : | |
| | : | No. 19AP-64 |
| v. | : | (M.C. No. 17EVA-60434) |
| City of Gahanna, Ohio, et al., | : | (REGULAR CALENDAR) |
| Appellees-Appellees. | : | |

D E C I S I O N

Rendered on May 12, 2020

**On brief:** *Plank Law Firm, LPA*, and *David Watkins,* for appellant. **Argued:** *David Watkins*.

**On brief:** *Frost Brown Todd, LLC, Frank J. Reed, Jr., Thaddeus M. Boggs,* and *Shane W. Ewald,* for appellees. **Argued:** *Frank J. Reed, Jr.*

APPEAL from the Franklin County Municipal Court,
Environmental Division

BEATTY BLUNT, J.

{¶ 1} Pursuant to R.C. 2506.04, appellant Access Ohio, LLC ("Access Ohio"), appeals from the January 4, 2019 judgment of the Franklin County Municipal Court, Environmental Division, in which that court affirmed the decision of appellees City of Gahanna and City of Gahanna, Ohio Board of Zoning and Building Appeals (the "BZBA") (collectively, the "City"), upholding the decision of the City of Gahanna, Ohio Planning Commission (the "Planning Commission") denying a conditional use permit for three parcels located in the city of Gahanna, Ohio. For the following reasons, we reverse the judgment of the trial court.

## I.  Facts and Procedural History

{¶ 2}    The record reflects the following facts and procedural history.  Access Ohio is a provider of mental health services in in Central and Southwest Ohio.  Access Ohio purchased three parcels of real property commonly known as 121 James Road and 175 W. Johnstown Road (the "Property") on September 25, and November 18, 2015, respectively. The Property is located in the city of Gahanna and consists of a 100-bed nursing home, an office building, parking and drive areas, and landscaping.  The Property is currently zoned in the Community Commercial District ("CC District").

{¶ 3}    Access Ohio purchased the Property for the purpose of operating an outpatient drug and alcohol addiction treatment facility and to use the nursing home for living quarters for inpatient treatment.  Access Ohio did not plan to enlarge or expand the nursing home building.

{¶ 4}    On August 8, 2016, Access Ohio filed its initial application for conditional use, which stated that the conditional use request was "to permit living quarters as an integral part of a permitted use building."  (Access Ohio's Trial Brief at 4.)  On December 7, 2016, Access Ohio first appeared before the Planning Commission to present its request for the conditional use.    Access Ohio appeared several more times before the Planning Commission:  on January 18, 2017 (denominated as a "Planning Commission Workshop"); on January 25, 2017; on February 8, 2017; on February 15, 2017 (denominated as a "Planning Commission Workshop"); and lastly, on February 22, 2017, at which hearing the Planning Commission voted unanimously against approval of the requested conditional use.

{¶ 5}    Access Ohio appealed the decision of the Planning Commission to the BZBA and the matter was heard on May 4, 2017.  On May 23, 2017, the BZBA certified its Record of Action which unanimously upheld the decision of the Planning Commission and denied Access Ohio's appeal.

{¶ 6}    On June 14, 2017, pursuant to R.C. 2506.04, Access Ohio filed an appeal with the Franklin County Municipal Court, Environmental Division (the "trial court").  The matter proceeded to hearing on April 11, 2018.

{¶ 7}    On January 4, 2019, the trial court issued its decision and entry affirming the decision of the BZBA to uphold the decision of the Planning Commission denying the

conditional use permit sought by Access Ohio. More specifically, the trial court found that "[a]n inpatient facility such as the one proposed here is not a conditional use permitted under Gahanna Codified Ordinances 1153.03(a)(2). Consequently, the decision of the Board of Zoning and Building Appeals upholding the Planning Commission decision is AFFIRMED." (Emphasis sic.) (Decision and Entry at 5.)

{¶ 8} This timely appeal followed.

## II. Assignments of Error

{¶ 9} Access Ohio assigns the following three errors for our review:

[1.] The Trial Court erred by finding that Access Ohio's proposed use of the Property was not a conditional use in the City of Gahanna's Community Commercial (CC) District.

[2.] The Trial Court erred by not considering Appellant's objection to the City of Gahanna Planning Commission's representation by counsel before the City of Gahanna's Board of Zoning and Building Appeals.

[3.] The Trial Court erred by not finding the Appellant's proposed use was a permitted use in the City of Gahanna's CC District.

## III. Standard of Review

{¶ 10} We begin by setting forth the standards of review applicable to the trial court and to this court. In an appeal brought pursuant to R.C. Chapter 2506, the trial court, acting as an appellate court, may find that the order or decision appealed from is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. "Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." *Id.* The grounds for reversal are set forth in R.C. 2506.04 as "a disjunctive list, so each ground must be read to have a distinct meaning." *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, __ Ohio St.3d __, 2019-Ohio-4499, ¶ 12, citing *Freedom Rd. Found. v. Ohio Dept. of Liquor Control*, 80 Ohio St.3d 202, 205 (1997). Thus, the presence of any one of the six grounds listed in R.C. 2506.04 will independently justify a trial court's reversal of an administrative order. *Id.*

{¶ 11} The Supreme Court of Ohio has stated that although the scope of review for a trial court in an R.C. Chapter 2506 administrative appeal is not de novo, such an appeal " ' "often in fact resembles a *de novo* proceeding." ' " *Shelly Materials* at ¶ 13, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984), quoting *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 370 (1975). The trial court " 'weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the administrative agency." *Id.*, quoting *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 13. The trial court is not permitted to " 'blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise.' " *Id.*, quoting *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). Nevertheless, the trial court has " 'the power to examine the whole record, make factual and legal determinations, and reverse the [administrative agency's] decision if it is not supported by a preponderance of substantial, reliable, and probative evidence.' " *Id.*, quoting *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, ¶ 24, citing *Dudukovich* at 207.

{¶ 12} A trial court's decision in an R.C. Chapter 2506 administrative appeal may be appealed to the court of appeals but only on "questions of law." *Shelly Materials* at ¶ 17, citing R.C. 2506.04. Thus, "under R.C. 2506.04, an appeal to the court of appeals is 'more limited in scope' than was the appeal to the trial court." *Id.*, citing *Kisil*, at 34; *see id.* at 34, fn. 4. While the trial court "is required to examine the evidence, the court of appeals may not weigh the evidence." *Id.*, citing *Independence* at ¶ 14. In addition to deciding purely legal issues, which are reviewed de novo, the court of appeals is charged with determining whether the trial court abused its discretion, "which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence." *Id.*, citing *Boice v. Ottawa Hills*, 137 Ohio St.3d 412, 2013-Ohio-4769, ¶ 7, citing *Kisil* at 34.

{¶ 13} Accordingly, our determination in the within matter is limited to whether the trial court made any errors of law assigned on appeal, which we review de novo, and whether the trial court abused its discretion in applying the law. *One Neighborhood*

*Condominium Assn. v. Columbus, Dept. of Pub. Util., Div. of Water*, 10th Dist. No. 16AP-653, 2017-Ohio-4195, ¶ 14.

## IV. Law and Analysis

### A. First Assignment of Error

{¶ 14} In its first assignment of error, Access Ohio contends the trial court erred when it found that Access Ohio's proposed use of the Property was not a conditional use in Gahanna's CC District. We agree.

{¶ 15} "The application of [a zoning statute] to the facts is a 'question of law'—'an issue to be decided by the judge, concerning the application or interpretation of the law.' " *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148 (2000), citing *Black's Law Dictionary* 1260 (7th Ed.1999). *Accord, Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12 ("A question of statutory construction presents an issue of law that we determine de novo on appeal."). That the application of such a zoning statute involves a consideration of facts or the evidence does not turn this question into a question of fact. *Henley* at 148, citing *O'Day v. Webb*, 29 Ohio St.2d 215 (1972), paragraph two of the syllabus.

{¶ 16} Nevertheless, in interpreting a zoning ordinance, " '[a]n administrative agency's reasonable interpretation of local zoning codes is recognized as an area of administrative expertise and is to be presumed valid.' " *JP Morgan Chase Bank, Inc. v. Dublin*, 10th Dist. No. 10AP-965, 2011-Ohio-3823, ¶ 11, quoting *Glass City Academy, Inc. v. Toledo*, 179 Ohio App.3d 796, 2008-Ohio-6391, ¶ 18 (6th Dist.), citing *Lamar Outdoor Advertising, Inc. v. Dayton Bd. of Zoning Appeals,* 2d Dist. No. 20158, 2004-Ohio-4796, ¶ 6, and *Dick v. Kelleys Island Bd. of Zoning*, 6th Dist. No. E-86-63 (June 19, 1987). Unless the interpretation of a local zoning code is clearly in error, a court should defer to the administrative interpretation. *In re Aultman Hosp.*, 80 Ohio App.3d 134, 139 (10th Dist.1992). Such deference "is based upon an awareness that an administrative judgment is '* * * the product of administrative experience, appreciation of the complexities of the problem, realization of the statutory policies and responsible treatment of the facts.' " *Id.*, quoting *Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 151 (1989).

{¶ 17} In this case, it is clear from the record that under the zoning ordinances applicable to this matter, the City's own interpretation of those ordinances resulted in its conclusion that Access Ohio's proposed use of the Property was a conditional use within the City's CC District. Because we find the City's interpretation was reasonable and not clearly in error, it was error for the trial court to have disregarded the City's finding on this issue.

{¶ 18} As noted previously, the Property is currently zoned in the CC District of Gahanna. Chapter 1153 of the Codified Ordinances of the city of Gahanna governs "General Commercial Districts," and section 1153.03 specifically governs "CC Community Commercial District[s]." City of Gahanna Codified Ordinances Section 1153.03(a) provides as follows:

> (a) *Permitted Uses.* Only the uses included under the following listed numbers or as otherwise specified in this district shall be permitted in the Community Commercial District."

Section 1153.03(a)(2) further provides that permitted uses include "809 Health and allied services, not elsewhere classified." Thus, "health and allied services" which are not classified elsewhere in the zoning ordinances are permitted uses in the City's CC District.

{¶ 19} Further, City of Gahanna Codified Ordinances section 1153.03(b)(2) provides as follows:

> (b) *Conditional Uses.* The following uses shall be allowed in the Community Commercial District, subject to the approval in accordance with Chapter 1169.
>
> (2) *Residential.* Living quarters as an integral part of a permitted use building.

Thus, where living quarters are an integral part of the permitted use of "health and allied services," such use is a conditional use in the City's CC district, "subject to the approval in accordance with Chapter 1169."

{¶ 20} In turn, Chapter 1169 of the Codified Ordinances of the City of Gahanna governs the "Procedure for Authorizing a Conditional Use," and provides as follows:

> (a) *Approval.* The Planning Commission shall approve an application for a conditional use if the following four conditions are met:

> (1) The proposed use is a conditional use of the zoning district and the applicable development standards established in this Zoning Ordinance are met.
>
> (2) The proposed development is in accord with appropriate plans for the area.
>
> (3) The proposed development will not have undesirable effects on the surrounding area.
>
> (4) The proposed development will be in keeping with the existing land use character and physical development potential of the area.

City of Gahanna Codified Ordinances Section 1169.04(a)(1) through (4). Thus, pursuant to the clear language of the foregoing ordinance, an application for a conditional use must be approved by the Planning Commission where all four criteria under section 1169.04(a) are met.

{¶ 21} As noted above, the record makes clear that the City's own interpretation of the foregoing ordinances led to its conclusion that Access Ohio's proposed use of the Property was a conditional use in Gahanna's CC District. Counsel for the City acknowledged this during the April 11, 2018 hearing in the trial court when stating "[a]nd I believe all parties now agree that the residential component of the drug and alcohol treatment facility is the conditional use." (Tr. at 21.) Prior to this declaration in open court, the City also stated in its trial brief, after referring to section 1153.03, "[t]he overnight, residential component makes this a conditional use in the CC district, under the Code establishing uses in the CC district." (The City's Trial Brief at 6.) Furthermore, the February 15, 2017 (updated) Staff Comments relating to Access Ohio's conditional use application and whether all four criteria under section 1169.04(a) had been met reflect the following as the City's response to the first criterion, i.e., Section 1169.04(a)(1):

> *It has been determined by the City Attorney that the proposed use is a conditional use of the Community Commercial zone district. It is staff's opinion that the request is consistent with this condition.*

(Emphasis sic.) (Feb. 15, 2017 (updated) Staff Comments at 1.)

{¶ 22} In short, throughout the course of the proceedings of this matter, the City has been unwavering in its position that the proposed use was a conditional use under section

1169.04(a)(1). Indeed, all arguments presented by both sides during the hearing in the trial court related to the other three criteria for obtaining approval for the conditional use under section 1169.04(a)(2), (3), and (4). Although now, on appeal, the City asserts that "[h]aving the benefit of the Environmental Court's analysis of this legal question, the City is persuaded that the Environmental Court reached the correct legal conclusion," we are constrained by the record in this matter, and nothing in the record supports any conclusion other than that the City determined that Access Ohio's proposed use of the Property was a conditional use within the City's CC District based on the City's own interpretation of the applicable zoning ordinances. (The City's Appellate Brief at 10.) Furthermore, we find this interpretation entirely reasonable and not clearly in error. Therefore, it was improper for the trial court to have ignored the City's interpretation of its own zoning ordinances which led to the City's conclusion that Access Ohio's proposed use of the Property was a conditional use within the City's CC District. *JP Morgan Chase Bank* at ¶ 11; *Aultman Hosp.*

{¶ 23} Not only was it improper for the trial court to disregard the City's determination that the proposed use was a conditional use under the applicable zoning ordinances and to find instead that it was not such a conditional use, but in coming to its own conclusion, the trial court engaged in a flawed statutory construction analysis. The trial court began its analysis by finding that under 1153.03(a)(2), the permitted use of "[809-H]ealth and allied services, not elsewhere classified" is vague because "the ordinances presume health services will be defined elsewhere, but do not provide those definitions." (Decision and Entry at 4.)

{¶ 24} We do not agree that this language is vague. The language evokes a general, "catch-all" type of category of permitted uses which purposefully and clearly allows for health and allied services that are not specifically provided for elsewhere in the ordinances. Although such a "catch-all" type category is certainly broad, merely because an ordinance may be broad does not render it impermissibly vague. *See, e.g., Lesiak v. Ohio Elections Comm.*, 128 Ohio App.3d 743, 749 (10th Dist.1998) (finding that a broadly worded statute prohibiting direct or indirect solicitation of contributions, subscriptions or payments from candidates for political office was neither vague nor ambiguous); *State ex rel. HGC Enters. v. Buehrer*, 10th Dist. No. 12AP-482, 2013-Ohio-2108, ¶ 14 (stating that a statute is not

vague if the meaning of words in common usage can be ascertained from the meaning commonly attributed to them). Furthermore, we surmise, although it is certainly not clear from the trial court's decision, that when the trial court stated it found this language to be "vague,"[1] the trial court meant that it found it to be "ambiguous." We likewise do not find this ordinance to be ambiguous. Even if we did find it ambiguous, the ordinance would be required to be construed in favor of Access Ohio. *Cleveland Clinic* at ¶ 34, citing *In re Appeal of Univ. Circle, Inc. v. Cleveland*, 56 Ohio St.2d 180, 184 (1978). Moreover, as previously set forth, if it were ambiguous, the court should defer to the construction of the statute as formulated by the City, unless that construction is clearly in error. *Aultman Hosp.* at 139.

{¶ 25} Next, the trial court determined that because the permitted use of "[809-H]ealth and allied services, not elsewhere classified" is vague, it must look outside of the ordinances to interpret it. (Decision and Entry at 4.) The trial court observed that the City's zoning ordinances appeared to use the Standard Industrial Classification ("SIC") categories as a basis for its permitted uses, so the trial court reviewed the classification for SIC 809 as set forth in the SIC Manual (1987) promulgated by the Occupational Safety and Health Administration, United States Department of Labor.[2] Although the trial court's decision does not explain this, the classification for SIC 809,[3] set forth as "Industry Group 809: Miscellaneous Health And Allied Services, Not Elsewhere Classified," includes three subgroups as follows:

- 8092 Kidney Dialysis Centers
- 8093 Specialty Outpatient Facilities Not Elsewhere Classified [–] Establishments primarily engaged in outpatient care of a specialized nature with permanent facilities and with medical staff to provide diagnosis,

---

[1] The concept of "vagueness" within a statute is almost entirely confined to statutes proscribing criminal behavior. *See, e.g., Traditions Tavern v. Columbus*, 10th Dist. No. 06AP-367, 2006-Ohio-6655, ¶ 22, quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954) (" 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statue.' ").

[2] The trial court retrieved the information from the website https://www.osha.gov/pls/imis/sic_manual.html, and we have therefore used the same source.

[3] SIC 809 is itself a subgroup of "Major Group 80: Health Services." https://www.osha.gov/pls/imis/sic_manual.display?id=67&tab=group.

treatment, or both for patients who are ambulatory and do not require inpatient care.

* * *

- 8099 Health and Allied Services, Not Elsewhere Classified [–] Establishments primarily engaged in providing health and allied services, not elsewhere classified.

*See* https://www.osha.gov/pls/imis/sic_manual.display?id=67&tab=group. Subgroup 8093 is further broken down to include nine types of outpatient facilities, including "Alcohol treatment, outpatient clinics" and "Drug treatment, outpatient clinics." https://www.osha.gov/pls/imis/sic_manual.display?id=202&tab=description.

{¶ 26} Although not elucidated in the trial court's decision, the trial court appears to have focused on subgroup 8093, "Specialty Outpatient Facilities,", presumably because that subgroup specifically includes alcohol treatment outpatient facilities and drug treatment outpatient facilities, which is part of Access Ohio's plan for the Property. (Decision and Entry at 4.) The court then extrapolated that "[i]f living quarters are an integral part of Access Ohio's proposed use, then that use is by definition not an outpatient facility," and "[i]f the facility is not an outpatient facility, it is not permitted by the zoning ordinances." *Id.* Thus, the trial court concluded that only outpatient drug and alcohol treatment facilities were permitted uses under the City's zoning ordinances. Put another way, it appears from the trial court's decision that the trial court decided that because subgroup 8093 of the SIC Manual exists, its classification of "Specialty Outpatient Facilities, Not Elsewhere Classified" *must have been what the legislative body for the City of Gahanna meant* when it included "[809-H]ealth and allied services, not elsewhere classified" as a permitted use under section 1153.03(a)(2).

{¶ 27} But the trial court's reasoning is not only entirely circular, it improperly conflates what the zoning ordinances include as *permitted* uses with what the zoning ordinances allow as *conditional* uses. The trial court's analysis and wholly unexplained focus on subgroup 8093 also ignores the existence of the more general, "catch-all" subgroup of 8099 "Health and Allied Services, Not Elsewhere Classified" under SIC 809 that could have just as easily been what the City intended to mean when it included "809 Health and

Allied Services, not elsewhere classified" as a permitted use under section 1153.03(a)(2).[4] In any event, the conjecture on the part of and the assumptions and leaps of logic made by the trial court necessary to reach its own conclusion reveals precisely why a court should not substitute its own interpretation for that of the administrative body's in interpreting its own zoning ordinances. It was error for the trial court to disregard the City's own reasonable interpretation of its zoning ordinances under which it found Access Ohio's proposed use was a conditional use.

{¶ 28} It was likewise error for the trial court to determine that, at the urging of Access Ohio and contrary to the position of the City, subparts (2), (3), and (4) of section 1169.04(a) are inapplicable to this case. (Decision and Entry at 3.) Although the City argued that the terms "use" and "development" are interchangeable for purposes of the criterion set forth in section 1169.04(a)(1) through (4), the trial court rejected this argument and instead agreed with Access Ohio that these sections are not applicable because Access Ohio was not seeking to develop the Property. (Decision and Entry at 3.) We do not agree with this conclusion.

{¶ 29} Chapter 1123 of the Codified Ordinances of the City of Gahanna encompasses "Definitions," and section 1123.01(a) of that Chapter provides as follows:

> Words not particularly defined herein, shall be defined as found in the most recent edition of *The Latest Illustrated Book of Development Definitions*, by Harvey S. Moskowitz and Carl G. Lindbloom, published by Rutgers University. Words not particularly defined therein shall be defined as found in the most recent edition of the Dictionary of Architecture and Construction, published by McGraw Hill. Words not particularly defined therein shall be defined as found in Webster's New Universal Unabridged Dictionary.

Section 1123.63 specifically defines "use" as follows:

> *Use* means the specific purpose for which land or a building is designed, arranged, intended or for which it is or may be occupied or maintained. The term "permitted use" or its

---

[4] To us, this seems to be the more likely scenario, given that the language of the subgroup 8099 classification mirrors the language of the permitted use under section 1153.03(a)(2) of the City's zoning code.

> equivalent shall not be deemed to include any nonconforming
>
> use.

(Emphasis sic.)   The term "development," however, is not specifically defined.   Thus, pursuant to section 1123.01(a), to determine what is meant by that term, we must look to the outside sources set forth in the ordinance in the order in which they appear.

{¶ 30} According to *The Latest Illustrated Book of Development* as cited to by the City in its trial brief and at the hearing before the trial court, the definition of "development" includes "the...conversion...of any structure; or any use or extension of the use of the land." (The City's Appellate Brief at 9.)   The City determined that "[t]he conversion of a former nursing facility for the elderly into an outpatient and overnight, residential drug and alcohol treatment [facility] is within the definition of 'development,' " and therefore Access Ohio was required to meet all four subparts of the conditional use ordinance, i.e., section 1169.04(a), in order to obtain approval for a conditional use.  (The City's Appellate Brief at 9.)  We find this interpretation to be reasonable and not clearly in error.  Therefore, it was improper for the trial court to disregard the City's interpretation of its own ordinances which led to the City's determination that Access Ohio must meet all four criteria under section 1169.04(a) before being granted a conditional use permit.  *JP Morgan Chase Bank* at ¶ 11; *Aultman Hosp.* at 139.

{¶ 31} In sum, the City interpreted its own zoning ordinances as allowing Access Ohio's proposed use as a conditional use under section 1169.04(a)(1), so long as the other three criteria set forth in section 1169.04(a)(2) through (4) were met.  At the agency level, the City—via the BZBA—found those other three criteria had not been met, and, therefore, the application of Access Ohio for a conditional use permit was denied.  The trial court should have accepted the City's reasonable interpretation of its own zoning ordinances and performed the requisite analysis of the other three criteria. More specifically, the trial court should have examined the entire record, weighing the evidence to determine whether a preponderance of substantial, reliable, and probative evidence supports the City's decision to deny the application of Access Ohio for a conditional use permit.  Because the trial court failed to undertake the requisite analysis and instead found that Access Ohio's proposed use of the Property was not a conditional use in the City's CC District, the trial court erred.

{¶ 32} Accordingly, we sustain Access Ohio's first assignment of error.

**B. Second Assignment of Error**

{¶ 33} In its second assignment of error, Access Ohio asserts that the trial court erred by not considering its objection to the Planning Commission's representation by counsel before the BZBA. We disagree.

{¶ 34} In support of its argument that the Planning Commission should not have been represented by counsel at the BZBA hearing, Access Ohio cites to *Safest Neighborhood Assn. v. Athens Bd. of Zoning Appeals,* 4th Dist. No. 12CA32, 2013-Ohio-5610, a Fourth District case that held neither a Planning Commission nor a Board of Zoning Appeals has standing to appeal a trial court's reversal of their decisions. But in making this argument, Access Ohio is confusing the Planning Commission's right to file an appeal with this court, which under *Safest Neighborhood* it would not have, with its right to be represented on appeal as an appellee. In other words, just because neither the Planning Commission nor the BZBA would have the right to appeal to this court if the trial court had reversed the BZBA's decision—which is not what happened in this case in any event—this does not mean that the Planning Commission, which is deemed the "appellee" for purposes of an appeal to the BZBA pursuant to section 147.03(b) of the City of Gahanna Codified Ordinances, does not have the right to be represented by counsel at the BZBA hearing.

{¶ 35} Furthermore, although Access Ohio argues it was "improper and unfair" for the BZBA to permit the hearing to go forward over Access Ohio's objection and a "violation of Access' due process rights" for the Planning Commission to be represented by counsel,, Access Ohio fails to explain how it was unfair or in what way its due process rights were violated. (Access Ohio's Appellate Brief at 27, 26.) We do not find that the Planning Commission being represented by special counsel at the BZBA hearing violated Access Ohio's due process rights or otherwise resulted in any prejudice to Access Ohio, and the trial court did not err by not considering this objection.

{¶ 36} Accordingly, we overrule Access Ohio's second assignment of error.

**C. Third Assignment of Error**

{¶ 37} In its third assignment of error, Access Ohio asserts the trial court erred by not finding that Access Ohio's proposed use of the Property was a permitted use in the City's CC District. We disagree.

{¶ 38} Access Ohio's argument on this point is premised on section 1123.33 of the City of Gahanna's zoning code. That section provides as follows:

> Hospital, nursing home, rest home, convalescent home, *home for substance abusers* means a building or part of a building used for a hospital, the nursing and care of convalescents, aged people, and/or *substance abusers*, which must meet the provisions for the same found in the Ohio Revised Code and any proper and legal operations promulgated thereunder.

(Emphasis omitted; added.) Access Ohio first points out that hospitals, nursing homes, rest homes and convalescent homes are all permitted uses under the City's zoning code. Access Ohio then asserts that because "home for substance abusers" is defined in the same section as the foregoing permitted uses, "home for substance abusers" must likewise be a permitted use.

{¶ 39} We find no merit in Access Ohio's position. Rather, we agree with the City that the term "home for substance abusers" is an orphan term that is not used anywhere else in the zoning code, as even Access Ohio concedes. Because "home for substance abusers" is not specifically included as a permitted use under section 1153.03(a), which clearly provides that "[o]nly the uses included under the following listed numbers or as otherwise specified in this district shall be permitted in the Community Commercial District," it is not a permitted use.

{¶ 40} Accordingly, we overrule Access Ohio's third assignment of error.

## V. Disposition

{¶ 41} In summary, Access Ohio's first assignment of error is sustained, its second and third assignments of error are overruled. The judgment of the Franklin County Municipal Court, Environmental Division, is reversed, and this cause is remanded to that court for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____