[Cite as *3717 E. Cleveland Rd., L.L.C. v. Berlin Twp. Zoning Bd. of Appeals*, 2020-Ohio-4604.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| 3717 E. Cleveland Road, LLC | Court of Appeals No. E-19-049 |
| Appellee | Trial Court No. 2018CV0705 |
| v. | |
| Berlin Township Zoning Board of Appeals, et al. | **DECISION AND JUDGMENT** |
| Appellant | Decided: September 25, 2020 |

* * * * *

John W. Monroe, Anthony J. Coyne, and Tracey S. McGurk, for appellee.

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Susan Ryan Brown, Assistant Prosecuting Attorney, for appellant.

* * * * *

**OSOWIK, J.**

## Introduction

**{¶ 1}** In this administrative appeal, the appellant, Berlin Township of Erie County, appeals a judgment by the Erie County Court of Common Pleas that reversed a decision

by the Berlin Township Board of Zoning Appeals and ordered the agency to approve an application filed by the appellee, 3717 E. Cleveland Road LLC, to expand a manufactured home community. For the following reasons, we reverse.

**Facts and Procedural History**

{¶ 2} This case concerns property in Berlin Township, along Lake Erie, in Erie County. According to the record, Stan and Jeanie Baryliski purchased a 20.9957 acre property in 1963 ("the original parcel"). Since that time, it has been home to the Queen of the Lakes Manufactured Home Community.

{¶ 3} In June of 1972, Berlin Township amended its zoning resolution to create "manufactured home park districts," and it required that all mobile home parks "shall be located only in" those districts. *See* Article 17 of the Berlin Township Zoning Resolution (hereinafter "the resolution"). Queen of Lakes was not situated in a manufactured home park district.

{¶ 4} Article 6 of the resolution recognizes "nonconformities" and provides for their lawful continuation. Specifically, Article 6, Section 6.7 provides that, "[w]here, at the time of adoption of this Resolution, lawful uses of land exist which would not be permitted by the regulations imposed by this Resolution, the uses may be continued so long as they remain otherwise lawful * * *." The parties agree that, once Article 17 went into effect, Queen of the Lakes qualified as a nonconforming use.

{¶ 5} In November of 2016, the zoning inspector for Berlin Township approved a request for a "lot spit" of the original parcel. The original parcel was then divided into

2.

three separate parcels: the west parcel, consisting of 5.2 acres, the middle parcel, consisting of 11.7642 acres, and the east parcel, consisting of 4.0177 acres. All 103 mobile home sites were (and remain) located on what-is-now the middle parcel.

{¶ 6} John Flask is the "managing member" of 3717 E. Cleveland Road, LLC., the purchaser of the east parcel and the appellee herein. Flask has a long history with Queen of the Lakes, having kept "the books" for the mobile home park since it was owned by the Baryliskis and later, the Barylski Limited Partnership. Flask testified about the circumstances that led up to the lot split and purchase in November of 2016. According to Flask, the original parcel was split into three parcels because the bank that financed the purchase would only provide a loan for the "income producing" segment of the land, i.e. the middle parcel. Therefore, according to Flask, the east and west parcels were purchased on a "land contract," with the seller providing the financing. On November 22, 2016, each parcel was transferred, by separate deed, from the Barylski Limited Partnership to its respective purchaser: 3717 E. Cleveland Road, LLC (east parcel), 3715 E. Cleveland Road, LLC (middle parcel) and 3713 E. Cleveland Road LLC (west parcel). The owners of the middle and west parcels are not parties to this litigation.

{¶ 7} On September 11, 2018, the appellee filed an "Application for Reasonable Alteration or Enlargement of a Nonconforming Structure." Article 6, Section 6.8(1) allows "minimal enlargement or alteration of a nonconforming structure," subject to the criteria set forth in subsection (1)(a)-(d) after a hearing before the five-member Berlin

3.

Township Board of Zoning Appeals ("BZA"). Hearings on the application were held on October 11 and November 29, 2018.

{¶ 8} According to the application, appellee "[sought] to expand the [mobile] park within its previous footprint by adding a maximum of * * * 22 additional [mobile] home sites."[1] At the first hearing, the appellee established that there were no structures on the east parcel.[2] Given the absence of any structures on it, the BZA questioned the appropriateness of the application. The appellee conceded that there was some "confusion with the application" and requested that the matter be "tabled" so that it could "revisit both application and procedure."

{¶ 9} When the hearing reconvened a month later, the appellee reframed its request to expand upon a nonconforming use, not structure. But, it acknowledged that the resolution expressly prohibits any expansion of a nonconforming use. In particular, Article 6, Section 6.7(1) and (2) provide,

> 1. No such nonconforming uses shall be enlarged or increased, nor extended to occupy a greater area of land than was occupied at the effective date of adoption or amendment of this Resolution.

---

[1] An expansion would also require approval by the Ohio Department of Commerce which regulates mobile home park licenses, including the placement of home-sites within a park.

[2] According to the record, at the time the appellee purchased the east parcel in 2016, it had a single structure located on it, which functioned as an office for the mobile home park. The appellee had it torn down because it was filled with mold, and the structure was not replaced.

4.

2. No such nonconforming uses shall be moved in whole or in part to any portion of the lot or parcel other than that occupied by such uses at the effective date of adoption or specifically provided for in this Resolution.

{¶ 10} Appellee argued that Section 6.7 violated Ohio law, specifically R.C. 519.19, *discussed infra*. The appellee also argued that the BZA had the "discretion" to grant it a "variance." The BZA asserted that the issue of a variance, which is governed by Article 7 of the resolution, was not before them.

{¶ 11} At the conclusion of the hearing, the BZA denied the application. In its written decision, it found, "[u]pon the evidence presented at the hearing the board makes the following findings of fact: that Article 6, Section 6.7, Subsection 6.7(1) and (2) prohibit the [BZA] from granting the request."

{¶ 12} Pursuant to R.C. Chapter 2506, the appellee appealed to the Erie County Court of Common Pleas.

**The Court of Common Pleas' Decision**

{¶ 13} The lower court found that the appellee presented "sufficient, credible and probative evidence" to establish that a nonconforming use applies to "the property as a whole, not just portion thereof." But, the court made no finding with respect to the appellee's request to increase or enlarge that nonconforming use, and it made no reference to the resolution, including Section 6.7(1) or (2).

{¶ 14} Instead, the trial court concluded that the appellee "sought" and was "entitled to" a reasonable variance from the "strict application of the Township's Zoning

5.

Resolution" under *Duncan v. Middlefield,* 23 Ohio St.3d 83, 491 N.E.2d 692 (1986). In *Duncan,* the Ohio Supreme Court set forth seven "factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property." *Id.* at syllabus. In this case, the trial court concluded that "the weight of the[se] factors falls in favor of" the appellee, and therefore, the denial of the appellee's request for an area variance was an abuse of discretion. (*See* Judgment Entry at 6-9). By decision dated August 15, 2019, the court reversed the BZA's decision and ordered it to "issue zoning approval of the expansion of the prior existing non-conforming use."

{¶ 15} The township appealed the lower court order and presents the following assignments of error.

## Assignments of Error

I. The common pleas court abused its discretion by failing to consider as part of the evidence the Township's zoning resolution that prohibited the Board of Zoning Appeals (BZA) from granting Property Owner's Application that sought to expand a non-conforming use and by substituting its judgment for that of the BZA when it reversed the BZA's denial of the Property Owner's application.

II. The common pleas court erred as a matter of law when it weighed the evidence and issued orders based on its factual finding that attributed ownership of the wrong parcel of land to the BZA applicant.

6.

III.  The common pleas court exceeded its appellate jurisdiction and thereby abused its discretion as a matter of law by deliberating and adjudicating the issue of an area variance that was not applied for or appealed to the Township BZA.

IV.  If the common pleas had appellate jurisdiction on the issue of an area variance, which Appellant denies, than [sic] the common pleas court abused its discretion by failing to consider as part of the evidence in the record as a whole the Township's zoning provisions on variances in its determination that an area variance should have been awarded by the BZA to Property Owner.

V.  If the common pleas court had appellate jurisdiction on the issue of an area variance, which Appellant denies, than [sic] the common pleas court abused its discretion when it relied on the merits of the wrong type of variance as a the basis of its order that requires the BZA to approve a use of the property not permitted by the Township's Zoning Resolution.

VI.  The common pleas court erred as a matter of law when it allowed Property Owner, a limited liability company, to assert the interests of, and demand relief for two neighboring corporate landowners that made no appearance in the administrative and judicial proceedings, and then adjudicated the zoning status of those neighboring parcels.

VII.  The common pleas court erred as a matter of law by exceeding

its jurisdiction when it deliberated and decided that three separate parcels

owned by three separate landowners was a single nonconforming use where

no certificate of nonconforming uses had ever been applied for, or denied

by the township zoning inspector, and the BZA lacked jurisdiction to

decide that issue.

**Standard of Review**

{¶ 16} In an appeal brought pursuant to R.C. Chapter 2506, "[t]here are limits to a court of common pleas review of the administrative body's decision." *AT&T Communications of Ohio, Inc. v. Lynch,* 132 Ohio St.3d 92, 2012-Ohio-1975, 969 N.E.2d 1166, ¶ 13.  The court is "authorized to determine whether the agency's decision is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.'" *Id.* at ¶ 14, quoting R.C. 2506.04.  The court will then "affirm, reverse, vacate, or modify the order * * *, or remand" the underlying administrative decision under that standard of review specified in the statute.  R.C. 2506.04.  "These standards that a court of common pleas must employ and the dispositions that it must reach are more limited than relief that could be awarded pursuant to a trial, and therefore, the administrative appeal is more akin to an appeal than a trial." *AT&T* at ¶ 14.  In weighing evidence, the common pleas court may not "blatantly substitute its judgment for that of the agency, especially in areas of

administrative expertise." *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

{¶ 17} The standard of review employed by the court of appeals is "more limited in scope" to "questions of law." (Citations omitted.) *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, 145 N.E.2d 246, ¶ 17. "R.C. 2506.04 requires the court of appeals to affirm unless the court of appeals finds, as a matter of law, that the decision *of the common pleas court* is not supported by a preponderance of reliable, probative, and substantial evidence." (Emphasis in original.) *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 27 (Finding that the appellate court "reviewed the wrong decision [when] [i]t found that the BZA's resolution was properly supported by the requisite quantum of evidence. It should have applied that standard to the decision of the common pleas court."). Thus, our determination in this case is limited to whether the trial court "made any errors of law assigned on appeal, which we review de novo, and whether the trial court abused its discretion in applying the law." *Access Ohio, LLC v. Gahanna,* 10th Dist. Franklin No. 19AP-64, 2020-Ohio-2908, ¶ 10.

### Law and Analysis

{¶ 18} We address the township's assignments of error out of order.

### 1. The trial court did not err in finding that the east parcel is a nonconforming use.

{¶ 19} "[W]hen a particular land use predates a zoning ordinance [prohibiting that use] * * * the property owner's use of the property remains legal but is considered a

9.

nonconforming use." *State ex rel. Sunset Estate Properties, L.L.C. v. Lodi*, 142 Ohio St. 3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 9.   Thus, nonconforming uses are uses that have been "grandfathered" and allowed to continue despite later-enacted zoning restrictions.  2 Am. Law. Zoning § 13:2 (5th Ed.2008).  The Ohio Supreme Court has recognized a constitutional right "to continue to use one's property in a lawful business * * * which was lawful at the time such business was established.  *City of Akron v. Chapman*, 160 Ohio St. 382, 116 N.E.2d 697 (1953), paragraph two of the syllabus (Finding that a nonconforming use is protected by Section 1, Article XIV of United States Constitution and Section 16, Article I of the Ohio Constitution).

{¶ 20} The protection afforded to nonconforming uses has also been codified in Ohio.  R.C. 519.19, applicable to townships, provides

> The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of said land shall be in conformity with sections 519.02 to 519.25, inclusive, of the Revised Code. The board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such

10.

reasonable terms as are set forth in the zoning resolution. *See also,* R.C. 303.19 (county governments) and R.C. 713.15 (municipal governments).

{¶ 21} To become nonconforming, a use must be: (1) a preexisting use (2) which was lawful when it was established (3) and which became noncompliant due to a later-enacted zoning restriction. 2 Am. Law. Zoning § 12:1 (5th Ed.2008). *See also Smith v. Juillerat,* 161 Ohio St. 424, 430, 119 N.E.2d 611 (1954) (Finding that the preexisting use must also be "substantial").

{¶ 22} In this case, it is uncontroverted that the operation of Queen of the Lakes, on the original parcel, preceded the 1972 rezoning provision that limited manufactured home parks to manufactured home park districts. The parties also agree that, once that rezoning provision went into effect, the continued operation of Queen of the Lakes was protected as a nonconforming use.

{¶ 23} However, the township does not agree with the lower court's conclusion that "the prior existing nonconforming use applies to all three parcels that make up the manufactured home park." (Judgment Entry at 4). In its seventh assignment of error, the township complains that the court "exceeded its jurisdiction" in making that conclusion because the issue—of whether the individual parcels continued as nonconforming uses after they were transferred to "three separate owners"—was never put to the BZA. Separately, in its sixth assignment of error, the township complains that the trial court should not have made any findings with respect to the middle and west parcels because the respective owners of those parcels are not parties to this litigation.

11.

We agree that the appellee lacked standing to assert any interest with respect to the west and middle parcels. Therefore, to the extent that the trial court's judgment entry can be interpreted as an opinion affecting those parcels, we find the township's sixth assignment of error well-taken, and we specifically confine this opinion to the appellee's property, i.e. the east parcel.

{¶ 24} In concluding that the east parcel qualifies as a nonconforming use, the trial court specifically cited the "approved plot plan from 1963," an aerial photo from 1971, and the testimony of John Flask. As noted by the court, Flask testified that the east parcel was "devoted [for] use as a manufactured home community" before and after it was "acquired" by the appellee. (Judgment Entry at 3-5). The court also noted the absence of "any evidence to the contrary." Based upon the uncontroverted evidence, it concluded that the appellee presented "substantial, reliable, and probative evidence" that the east parcel is "used in furtherance of the non-conforming use * * * as a manufactured home community."[3]

---

[3] In its second assignment of error, the township cites the trial court's misidentification of the appellee as the owner of the "west parcel" rather than the east parcel. It argues that the error is so significant as to "invalidate" the entire decision. We disagree and find that the error was typographical, as evidenced by the fact that the trial court did not repeat it, it correctly identified the appellee as "3717 E. Cleveland Road LLC," which, the record and the parties agree is the owner of the "east parcel," and the court correctly noted that the 4.011 acre parcel had an "office located on" it in the 1980's whereas the west parcel was used for "storage." We find that the error does not affect a substantial right of the parties and therefore we "must disregard it." *See* Civ.R. 61. The township's second assignment of error is not well-taken.

12.

{¶ 25} The township does not dispute any of the evidence cited by the trial court. We would add that the BZA also determined, if only implicitly, that the east parcel qualifies as nonconforming. Indeed, the BZA denied appellee's application—to "expand" upon a nonconforming use—because it found that "Article 6, Section 6.7, Subsection 6.7(1) and (2) prohibit[ed] it from granting the request." In other words, the BZA did *not* find that the east parcel no longer qualifies as a nonconforming use. Rather, it found that the resolution specifically prohibited it from *enlarging or increasing* that use. If the BZA had found that the east parcel was no longer protected, it could have rejected the application on that basis. That it did not do so indicates that the BZA also concluded that the east parcel continued to qualify as a nonconforming use, after its transfer to the appellee. We see no abuse of discretion by the lower court in reaching the same conclusion.

{¶ 26} Moreover, "[a] mere change in ownership does not destroy the right to continue a nonconforming use." *See* Rathkopf's *The Law of Zoning and Planning* § 72:20 (4th Ed. 2005). Indeed, "[t]he right to continue a nonconforming use, once it is lawfully established and not abandoned, runs with the land and is not confined to the particular person who was the owner or operator at the time the right became vested as a nonconforming use. * * *." Thus, the trial court's reasonable determination, that the "prior existing non-conforming use applies to" the east parcel is supported by the law and by the preponderance of the evidence in the record. Therefore, we may not "disturb" it. *State ex rel. 506 Phelps Holdings, LLC v. Cincinnati Union Bethel,* 1st Dist. Hamilton

13.

Nos. C120461, C-120624, C120474, 2013-Ohio-388, ¶ 69. For these reasons, we find the township's seventh assignment of error is not well-taken.

**2. The trial court erred by failing to apply Article 6, section 6.7 (1) and (2).**

{¶ 27} In its first assignment of error, the township argues that the trial court abused its discretion by "failing to consider or apply any evidentiary weight" to Article 6, Section 6.7(1) and (2), the provisions cited by the BZA in denying appellee's application.

{¶ 28} The trial court's authority was limited to determining whether the BZA's decision was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of [the] evidence on the whole record." R.C. 2506.04. But, the court made none of those findings, *with respect to Article 6, Section 6.7.* In failing to do so, we find that the lower court erred as a matter of law.

{¶ 29} "The application of [a zoning statute] to the facts is a 'question of law'— 'an issue to be decided by the judge, concerning the application or interpretation of the law.' That the application of such a zoning statute involves a consideration of facts or the evidence does not turn this question into a question of fact." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148, 735 N.E.2d 433 (2000), quoting *Black's Law Dictionary* 1260 (7th Ed. 1999). For example, In *Henley,* the court found that "the court of appeals did not exceed the proper scope of review under [R.C. 2506.04] when it sought to determine whether [a particular zoning provision] applied to the undisputed facts in the record, or whether the common pleas court abused its discretion by failing to apply [that provision]." *Id.* at 439 (Finding that, although the court of appeals did not exceed its

14.

standard of review, the higher court was "not precluded from reaching a different result").

{¶ 30} Here, the appellee filed an "application for reasonable alteration or enlargement of a nonconforming structure." At the hearing, when the fact became known that the east parcel lacked any "structure" to alter or enlarge, the appellee acknowledged the inapplicability of Section 6.8 and requested instead that the BZA approve an expansion of a nonconforming use. The BZA consistently took the position that the resolution lacked any "procedure for enlargement or alteration of uses," which is precisely what adding additional mobile home pads would do, i.e. they would occupy a larger area of the land than was occupied at the time Article 17 went into effect. Accordingly, the BZA denied the request, pursuant to Article 6, Section 6.7 (1) and (2).

{¶ 31} Zoning resolutions that prohibit the expansion or enlargement of a nonconforming use have generally been upheld. "Uses which do not conform to valid zoning legislation may be regulated, and even girded to the point that they wither and die." *City of Columbus v. Union Cemetary Ass'n,* 45 Ohio St.2d 47, 341 N.E.2d 298 (1976), citing *City of Akron v. Chapman,* 160 Ohio St. 382, 116 N.E.2d 697 (1953), paragraph one of the syllabus. Therefore, "[l]ocal governments may prohibit expansion, or substantial alteration of a nonconforming use, in an attempt to eradicate the use." *Beck v. Springfield Twp. Bd. Of Zoning Appeals,* 88 Ohio App.3d 443, 446, 524 N.E.2d 286 (9th Dist.1993) (Affirming the denial of a zoning certificate to construct additional 34 mobile homes on the remaining 6 undeveloped acres of parcel where zoning resolution

15.

specifically prohibited any "enlargement of area, space or volume occupied by or devoted to such [nonconforming] use"). *Accord Coy v. Clarksfield Township Board of Zoning Appeals,* 6th Dist. Huron No. H-96-041, 1997 WL 221121 (Apr. 25, 1997).

{¶ 32} "An administrative agency's reasonable interpretation of local zoning codes is recognized as an area of administrative expertise and is presumed to be valid." *Glass City Academy, Inc. v. Toledo,* 179 Ohio App.3d 796, 2008-Ohio-6391, 903 N.E.2d 1236, ¶ 18 (6th Dist.). Unless the interpretation of a local zoning code is "clearly in error," a court should defer to the agency's interpretation. *Access Ohio, LLC.,* 10th Dist. Franklin No. 19AP-64, 2020-Ohio-2908 at ¶ 16. Upon review, we find, as a matter of law, that the BZA's interpretation of Subsection 6.7(1) and (2) was reasonable, that those sections applied to the facts of this case, and that the lower court substituted its judgment for that of the agency in failing to apply them. Therefore, we find that the township's first assignment of error is well-taken.

### 3. The trial court erred by ordering the BZA to grant the appellee a variance.

{¶ 33} In its third assignment of error, the township argues that the lower court abused its discretion by ruling on the "issue [of a variance] that was not properly before the BZA or the common pleas court."

{¶ 34} The common pleas court found that the appellee "sought an area variance," that the appellee "presented sufficient evidence that it would face unreasonable practical difficulties if it does not receive an area variance" and that "the decision of the BZA to

16.

deny [appellee's] appeal was arbitrary, capricious and not supported by the evidence in the record." (Judgment Entry at 8).

{¶ 35} At the hearing, the BZA consistently articulated that the issue before it was limited to determining whether "to allow the enlargement of a nonconforming use," despite the appellee's claim that a nonconforming use and a variance are "the same thing." But, "[a] variance and a nonconforming use * * * are two distinct terms of art as used in the law of zoning. A nonconforming use comes into being because the use existed before enactment of the zoning regulation prohibiting the use." *Wurzelbacher v. Thiemann,* 1st Dist. Hamilton No. C-950607, 1996 WL 348027 (June 26, 1996). By contrast, the need for a variance "arises after the regulation has been enacted." *Id.,* citing Anderson, American Law of Zoning (3 Ed.1986), 365-366, Section 20.01. *See also Pacific Financial Services of America Inc. v. Board of Zoning Appeals of Deerfield Township,* 11th Dist. Portage No. 1997, 1989WL140165 (Nov. 17, 1989), * 4 (A variance is "only required" if the use was not in existence when the zoning resolution was enacted.). Here, the trial court's finding, that the east parcel is protected as a nonconforming use, is antithetical to its other finding that the appellee is entitled to a variance.

{¶ 36} The same situation was presented In *Condon v. Board of Zoning Appeals of City of St. Bernard,* 1st Dist. Hamilton No. C850214, 1986 WL 2822 (Mar. 5, 1986). There, the property owner operated a nonconforming roofing business. It filed an application to extend that use by replacing its roof and adding to its storage area. The

17.

BZA granted the application pursuant to its zoning ordinance that allowed for "repairs and alterations" of nonconforming buildings. Neighboring residents appealed. The trial court "characterized the application as a request for a variance and determined that [the business] failed to demonstrate by a preponderance of the evidence its qualification for a variance pursuant to [the regulation governing variances]." *Id.* at *2. The court of appeals reversed. It found that the lower court "erred as a matter of law in its determination that [the businesses'] request to add a pitched roof to its nonconforming building constituted a request for a variance." *See also Conrad v. Babcock,* 124 Ohio App.3d 667, 673, 707 N.E.2d 44 (11th Dist.1997) (Rejecting the argument that the BZA was "required to apply the standards used in reviewing a request for a variance" where a request to expand a nonconforming use was at issue, not a variance).

{¶ 37} Of course, Berlin Township's Zoning Resolution does allow for variances, as set forth in Article 7. ("[V]ariances shall conform to the procedures and requirements of 7.1 to 7.11 * * * of this Resolution.") Under Section 7.3, "[a] variance may be granted by the [BZA] if it concludes that strict enforcement of the resolution would result in unnecessary hardships for the applicant and that, by granting the variance the spirit of the resolution will be observed, public safety and welfare secured and substantial justice done." Section 7.4 specifies that "no variance * * * shall be granted * * * unless the [BZA] shall find that the written application for the requested variance contains all of the * * * requirements" set forth in Section 7.4(5)(a)-(g). Within a "reasonable time" after receiving an application for a variance, the BZA "shall hold a public hearing," for which

18.

public notice "shall be given." Sec. 7.6 and 7.7. Finally, within 30 days of the public hearing, the BZA "shall" approve or disapprove the variance application based upon the standards set forth in Section 7.3. Section 7.9.

{¶ 38} As noted by the township, none of the procedural requirements set forth above were "in place" for the BZA to have adjudicated whether to grant a variance. That is, no "application for variance," was submitted, no public notice was given, no hearing on an application held, and no evaluation was made by the BZA of the criteria set forth in Section 7.3. And, importantly, the trial court made no findings under, or any reference to, Article 7.

{¶ 39} We also reject the appellee's argument that its application (under Article 6) was "correctly" interpreted by the lower court as a request for a variance because its application "satisfies" the criteria under Article 7. First, the application lacks the specificity required by Section 7.4(1)-(5). It also bears noting that the appellee was encouraged at the hearing to "dismiss[]" its application under Article 6 and to "re-fil[e] [it] under something else." The appellee chose to continue in its pursuit of an expansion of nonconforming use, and it may not reframe its request at this juncture.

{¶ 40} "It is a well-established principle of Ohio law that, prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." (Quotation omitted.) *Nemazee v. Mt. Sinai Med. Ctr.,* 56 Ohio St.3d 109, 111–12, 564 N.E.2d 477 (1990). The exhaustion-of-administrative-remedies doctrine is a "court-made rule of judicial

19.

economy." *G.S.T. v. Avon Lake*, 48 Ohio St.2d 63, 65, 357 N.E.2d 38 (1976). Its purpose is also to "permit an administrative agency to apply its special expertise * * * and in developing a factual record without premature judicial intervention." *Nemazee.* The judicial deference afforded administrative agencies is to "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court * * *." (Quotation omitted.) *Id.* Here, the appellee's failure to "exercise," much less to "exhaust" its administrative remedies under Article 7 precluded the trial court from determining that the appellee was "entitled" to a variance.

{¶ 41} Just as it was improper for the trial court to disregard the BZA's determination that Article 6, Section 6.7(1) and (2) prohibited the agency from approving the appellee's application, it was similarly improper for the court to order the BZA to grant the appellee a variance that it never applied for. Having concluded that the court below erred as a matter of law in its determination that appellee was entitled to an area variance, we find that Berlin Township's third assignment of error is well-taken.

### Conclusion

{¶ 42} Upon examination of the proceedings before the BZA and the court below, we find that the BZA's decision to deny the application pursuant to Article 6, Secton 6.7(1) and (2) of the resolution was reasonable and that the trial court abused its discretion in failing to apply those sections. The trial court similarly erred in ordering the BZA to grant the appellee a variance that it did not apply for. Accordingly, we find that the township's first and third assignments of error well-taken. Our resolution on these

two assignments of error renders moot the township's fourth and fifth assignments of error, and therefore we decline to address them. As set forth herein, we find the township's sixth assignment of error well-taken and its second and seventh assignments of error not well-taken.

{¶ 43} The judgment of the Erie County Court of Common Pleas is reversed, in part, and affirmed, in part. This cause is remanded to that court for further proceedings consistent with this decision. Pursuant to App.R. 24, the appellee is ordered to pay the costs of this appeal.

Judgment reversed, in part,<br>
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, J. _____

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.